No. 26-20052

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**HARRIET PAYNE; CHARLES PAYNE, JR.; CAVIN PAYNE; STEPHANIE PAYNE; BETTY MORRISON; KIZZ GOINS; KATANIA DEARBORNE; ROBERT PAYNE,**

Plaintiffs - Appellees

v.

**CITY OF HOUSTON, TEXAS,**

Defendant - Appellant

---

## On Appeal from
United States District Court for the Southern District of Texas

4:23-CV-4686

---

## BRIEF OF APPELLANT, CITY OF HOUSTON, TEXAS

---

ARTURO G. MICHEL
City Attorney

Christy L. Martin
Chief, Torts/Civil Rights
Texas Bar No. 24041336
Federal Bar No. 754168
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street, 4th Floor
Houston, Texas 77002
832.393.6438 (telephone)
832.393.6259 (facsimile)
christy.martin@houstontx.gov

*Attorneys for City of Houston, Texas*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the persons and entities listed below as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Plaintiffs - Appellees**: | **Counsel for Plaintiffs - Appellees**: |
|---|---|
| Harriet Payne | Paul A.  Grinke |
| Charles Payne, Jr. | Aaron Dekle |
| Cavin Payne | Ben Crump Law, PLLC |
| Stephanie Payne | 5 Cowboys Way, Suite 300 |
| Betty Morrison | Frisco, Texas 75034 |
| Kizz Goins | |
| Katania Dearborne | James Sherry |
| Robert Payne | Carl Evans |
| | Stephen M.  Bergen |
| | McCathern, PLLC |
| | 3710 Rawlins St., Suite 1600 |
| | Dallas, Texas 75219 |

| **Defendant - Appellant**: | **Counsel for Defendant - Appellant**: |
|---|---|
| City of Houston, Texas | Christy L.  Martin |
| | Melissa Azadeh |
| | CITY OF HOUSTON LEGAL DEPARTMENT |
| | 900 Bagby Street, 4th Floor |
| | Houston, Texas 77002 |

*/s/Christy L.  Martin*
CHRISTY L.  MARTIN

ii

**STATEMENT REGARDING ORAL ARGUMENT**

Defendant–Appellant City of Houston, Texas ("Houston") respectfully requests oral argument. This municipal liability case, brought under 42 U.S.C. § 1983, involves a substantial and recurring question of constitutional law: whether a traffic accident is categorically beneath the threshold of a federal due process violation. This appeal also presents the important question of whether a trial court's refusal to identify the municipality's policymaker in the jury charge is reversible error. In addition, this appeal presents important questions relating to certain pretrial and trial rulings, and the record is extensive, including two prior appeals to this Court. Oral argument will aid the Court's resolution of the case.

## TABLE OF CONTENTS

Certificate of Interested Persons ...................................................................... ii

Statement Regarding Oral Argument .............................................................. iii

Table of Contents ........................................................................................... iv

Index of Authorities ...................................................................................... vii

Jurisdictional Statement ..................................................................................1

Statement of Issues Presented for review .......................................................3

    1.    The trial court erred in denying Houston's motions for judgment as a matter of law because the circumstances of the traffic accident did not violate substantive due process and because Plaintiffs-Appellees presented no evidence in support of essential elements of her Section 1983 claim. ....................................................3

    2.    The trial court erred in denying Houston's motion for new trial, which identified harmful charge errors, evidentiary rulings, and trial by ambush. .........3

Statement of the Case......................................................................................4

    I.    Statement of Facts...............................................................................4

    II.    Procedural History ..............................................................................6

Summary of the Argument...............................................................................9

Argument.......................................................................................................11

    I.    The trial court erred in denying Houston's motions for judgment as a matter of law because the traffic accident did not violate substantive due process and because Payne presented no evidence in support of essential elements of their Section 1983 claim.......................................................................................11

        A.    Standard of Review...........................................................................11

        B.    Payne's claim fails all required elements of *Monell*...............................11

        1.    A traffic accident resulting in unintended loss of life does not violate due process in the absence of evidence indicating intent to harm...............13

            a)    Only conduct that "shocks the conscience" can violate due process—and the accident falls far below this standard. ........................................14

            b)    Payne's due process claim fails even if one views Cabrera's conduct through the lens of deliberate indifference. ...........................................17

        2.    Payne presented no evidence that Houston's final policymaker promulgated and/or was deliberately indifferent to an unconstitutional policy or custom..............................................................................................18

a)    As a matter of law, HPD's police chief is the relevant final policymaker................................................................................19

b)    Payne presented no evidence connecting Houston's Chief to an unconstitutional policy or custom.......................................................22

c)    Payne's failure to train, supervise, and discipline theories are legally untenable because there is no evidence of deliberate indifference..........32

3.    Payne presented no legally sufficient evidence establishing that a city policy or custom was the "moving force" behind the alleged constitutional deprivation. ........................................................................................35

a)    The moving force standard demands a direct link between the entity's policy and the injury; *Monell* prohibits ordinary proximate cause..........35

b)    Payne Sr. caused the accident while failing to yield the right of way to oncoming traffic while making a left turn with an obstructed view. ..37

c)    Payne Sr. died from complications of a heart attack. ......................38

II.    The trial court erred in denying Houston's motion for new trial due to harmful charge errors, evidentiary rulings, and trial by ambush.........................40

A.    Standard of Review..............................................................................40

B.    The district court erroneously charged the jury, and the erroneous instructions affected the outcome of the case. ................................................41

1.    Standard of Review ........................................................................41

2.    The court committed reversible error in refusing to instruct the jury on the identity of Houston's final policymaker. ...............................................41

a)    Houston's request correctly stated the law. ....................................42

b)    Houston timely objected and later moved for new trial. .................43

c)    Houston's requested instruction "was not substantially covered" in the charge as a whole. ...........................................................................43

d)    The incorrect instruction seriously impaired Houston's defense. ...45

3.    Other errors in the charge affected the outcome in the case. ..............45

a)    Instead of neutrally reciting Payne's allegations, the instructions portrayed Payne's policy theories as already proven. .............................45

b)    The court refused to instruct the jury on applicable law from Texas Transportation Code.................................................................................46

c)    The court erred in submitting instructions and questions regarding theories of liability that were never pleaded or tried by consent............48

d)    The charge used the wrong due process standard.............................50

e)    The charge used the wrong standard for defining "deliberate indifference" as applied to the final policymaker.....................................51

f)    The charge erroneously diluted the "moving force" causation requirement. ....................................................................................52

g)    The charge submitted more than one theory of liability in a single question, which was changed from "and" to "or" during deliberations. ..52

C.    The court made erroneous evidentiary rulings that affected the jury's verdict................................................................................................................53

1.    The court erred in admitting expert testimony over Houston's objection that was not disclosed during discovery. ..........................................53

2.    The court erred in excluding significant evidence regarding periods of separation or estrangement between Payne Sr.  and his family....................54

3.    The court erroneously excluded evidence that Payne Sr. was not wearing his seatbelt and that marijuana was in his system at the time of his death. .............................................................................................................56

D.    The trial court's rulings unfairly and improperly subjected the City of Houston to trial by ambush. ....................................................................................56

1.    The Mighty Morphin *Monell*..................................................................57

2.    Houston was ambushed by opinion testimony from Darcy. ...............58

3.    Plaintiffs "stolen moments" damages theory was never disclosed until closing. .............................................................................................................60

E.    The damages awarded were excessive. ..........................................................61

Conclusion .........................................................................................................................63

Certificate of Service .......................................................................................................64

Certificate of Compliance with Type-Volume Limit ...............................................65

# INDEX OF AUTHORITIES

**Cases**

*Alvarez v. City of Brownsville,*
   904 F.3d 382 (5th Cir. 2018) ..................................................................26

*Armstrong v. Ashley*,
   60 F.4th 262 (5th Cir. 2023) ...................................................................32

*Boyd v. City of Houston, Tex.*,
   548 F.App'x 100 (5th Cir., 2013) (unpublished)........................................... 28, 50

*Brumfield v. Hollins*,
   551 F.3d 322 (5th Cir. 2008) ...................................................................51

*City of Houston v. Piotrowski*,
   237 F.3d 567 (5th Cir. 2001) ...................................................... passim

*City of St. Louis v. Praprotnik*,
   485 U.S. 112 (1988)................................................................... 19, 20

*Collins v. City of Harker Heights, Tex.*,
   503 U.S. 115 (1992)................................................................. 13, 26, 30

*Connick v. Thompson*,
   563 U.S. 51 (2011)................................................................................32

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998)................................................................. passim

*Daniels v. City of Dallas*,
   272 F.App'x 321 (5th Cir. 2008) (unpublished)........................................... 17, 18

*Daniels v. Williams*,
   474 U.S. 327 (1986)................................................................... 14, 15

*Doe v. Covington County Sch. Bd.*,
   675 F.3d 849 (5th Cir. 2012) (en banc) ............................................................13

*Doe v. Dallas Indep. School Dist.*,
    153 F.2d 211 (5th Cir. 1998) ...............................................................................20

*Douglass v. Delta Air Lines, Inc.*,
    897 F.2d 1336 (5th Cir. 1990) .............................................................................61

*Duvall v. Dallas Cnty., Tex.*,
    631 F.3d 203 (5th Cir. 2011) ...............................................................................51

*Echeverry v. Jazz Casino Co.*, LLC,
    988 F.3d 221 (5th Cir. 2021) (en banc) ........................................................ 11, 61

*Edwards v. City of Balch Springs, Tex.*,
    70 F.4th 302 (5th Cir. 2023) ......................................................................... 22, 24

*Elvis Presley Enterprises, Inc.  v. Capece*,
    141 F.3d 188 (5th Cir. 1998) ...............................................................................21

*Estate of Parker v. Miss. Dep't of Pub.  Safety*,
    140 F.4th 226 (5th Cir. 2025) ....................................................................... 16, 50

*Fraire v. of Arlington*,
    957 F.2d 1268 (5th Cir. 1992) .............................................................................31

*Grandstaff v. City of Borger, Tex.*,
    767 F.2d 161 (5th Cir. 1985) ...............................................................................54

*Gregory v. Chohan*,
    670 S.W.3d 546 (Tex. 2023) (plurality op.) ........................................................60

*Gros v. City of Grand Prairie*,
    181 F.3d 613 (5th Cir. 1999) ...............................................................................20

*Hill v. Shobe*,
    93 F.3d 418 (7th Cir. 1996) .................................................................................17

*Holmes v. Reddoch*,
    117 F.4th 309 (5th Cir. 2024) ..............................................................................40

*Jackson v. Gautreaux*,
  3 F.4th 182 (5th Cir. 2021) ...............................................................50

*James v. Harris Cnty.*,
  577 F.3d 612 (5th Cir. 2009) ............................................................36

*Jett v. Dallas Indep. Sch. Dist.*,
  7 F.3d 1241 (5th Cir. 1993) ..............................................................12

*Jett v. Dallas Indep. Sch. Dist.*,
  491 U.S. 701 (1989)................................................................... 19, 42

*Jones v. City of Hutto*,
  154 F.4th 332 (5th Cir. 2025) ...........................................................19

*Kanida v. Gulf Coast Med. Personnel*,
  363 F.3d 568 (5th Cir. 2004) ...................................................... 41, 42

*Mansfield v. Williamson County*,
  30 F.4th 276 (5th Cir. 2022) ........................................................ 35, 52

*Montano v. Orange Cnty., Tex.*,
  842 F.3d 865 (5th Cir. 2016) ............................................................61

*Moore v. Lillebo*,
  722 S.W.2d 683 (Tex. 1986).............................................................55

*Parkans Int'l LLC v. Zurich Ins. Co.*,
  299 F.3d 514 (5th Cir. 2002) ............................................................11

*Payne v. City of Houston*,
  No. 24-20150, 2025 WL 999085 (5th Cir. Apr. 3, 2025) (unpublished) .............7

*Pena v. City of Rio Grande*,
  879 F.3d 613 (5th Cir. 2018) ............................................................27

*Peterson v. City of Fort Worth*,
  588 F.3d 838 (5th Cir. 2009).................................................. 13, 22, 28

*Pineda v. City of Houston,*
    291 F.3d 325 (5th Cir. 2002) ..................................................... 22, 28, 30

*Rodgers v. Lancaster Police & Fire Dep't,*
    819 F.3d 205 (5th Cir. 2016) ..................................................................54

*Salas v. Carpenter,*
    980 F.2d 299 (5th Cir. 1992) ...................................................................30

*Sanders-Burns v. City of Plano,*
    594 F.3d 366 (5th Cir. 2010) ...................................................................33

*Scheurer v. Rhodes,*
    416 U.S. 232 (1974)...................................................................................24

*Schroeder v. City of Fort Thomas,*
    412 F.3d 724 (6th Cir. 2005)....................................................................24

*Slade v. City of Marshall, Tex.,*
    814 F.3d 263 (5th Cir. 2016) ...................................................................38

*Smith v. Walden,*
    228 F.3d 408 (5th Cir. 2000) (per curiam) (unpublished) ...................17

*Snyder v. Trepagnier,*
    142 F.3d 791 (5th Cir. 1998) ...................................................................12

*Soltesz v. Rushmore Plaza Civic Ctr.,*
    847 F.3d 941 (8th Cir. 2017) ...................................................................45

*Tharling v.  City of Port Lavaca,*
    329 F.3d 422 (5th Cir.  2003) ..................................................................44

*Thomas v. Hughes,*
    27 F.4th 995 (5th Cir. 2022) .....................................................................1

*Trabucco v. Rivera,*
    141 F.3d 720 (5th Cir. 2025) ............................................................. 41, 42

x

*U.S. v. Allison*,
  953 F.2d 870 (5th Cir. 1992) ...................................................................43

*U.S. v. Cessa*,
  856 F.3d 370 (5th Cir. 2017) ...................................................................44

*U.S. v. Hamilton*,
  46 F.4th 389 (5th Cir. 2022) ........................................................... 41, 46

*U.S. v. Peterson*,
  977 F.3d 381 (5th Cir. 2020) ...................................................................43

*Valle v. City of Houston*,
  613 F.3d 536 (5th Cir. 2010) ......................................................... 21, 35, 43

*Vela v. City of Houston*,
  276 F.3d 659 (5th Cir.  2001) ...................................................................19

*Verastique v. City of Dallas*,
  106 F.4th 427 (5th Cir. 2024) ............................................................ passim

*Wilson v. Garcia*,
  471 U.S. 261 (1985) ................................................................................11

*Yarbrough v. SlashSupport Inc.*,
  152 F.4th 658 (5th Cir. 2025) .................................................................53

*Zarnow v. City of Wichita Falls, Tex.*,
  614 F.3d 161 (5th Cir. 2010) ...................................................................33

**Statutes**

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

42 U.S.C. § 1983 ............................................................................... passim

TEX. TRANSP. CODE § 545.152................................................................ 37, 47, 48

TEX. TRANSP. CODE § 545.351 ....................................................... 25, 47, 48

TEX. TRANSP. CODE § 545.352 ............................................................. 47, 48

TEX. TRANSP. CODE § 545.365 ................................................. 25, 26, 47, 48

TEX. TRANSP. CODE § 546.001 ................................................... 25, 47, 48

TEX. TRANSP. CODE § 546.002 ....................................................................25

TEX. TRANSP. CODE § 546.004 ....................................................................48

TEX. TRANSP. CODE § 545.132 ......................................................................5

**Other Authorities**

FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS § 10.5 ........................................ 44, 45

HOUSTON, TEX., CODE OF ORDINANCES, §§ 34–22 ...............................................19

HOUSTON, TEX., CODE OF ORDINANCES, §§ 34–23 ...............................................20

HOUSTON, TEX., CODE OF ORDINANCES, §§ 34–24 ......................................... 20, 21

TEX. PATTERN JURY CHARGE 29.3 .......................................................................55

**Rules**

FED. R. CIV. P.37 .................................................................................60

FED. R. CIV. P. 26 ................................................................................59

FED. R. CIV. P. 4 ...................................................................................1

FED. R. CIV. P. 49 ................................................................................34

FED. R. CIV. P. 50(a) ...........................................................................11

Fed. R. Civ. P. 51 ................................................................................42

Fed. R. Civ. P. 54(b) ........................................................................................2
Fed. R. Evid. 103 ...........................................................................................53

**Constitutional Provisions**

U.S. Const.  Amend.  XIV, § 1 ................................................................. 6, 14, 46

## JURISDICTIONAL STATEMENT

The district court exercised subject matter jurisdiction over Plaintiffs-Appellees' federal and state claims under 28 U.S.C. § 1331.  While Houston's interlocutory appeal relating to the state law claims was pending in this Court (Appeal No. 25-20492), the federal claims proceeded to trial.  On November 24, 2025, the jury returned a verdict awarding Plaintiffs-Appellees $13 million in compensatory damages.  ROA.5792.  On January 23, 2026, the district court denied Houston's renewed motion for judgment and its motion for new trial.  ROA.6078.  On January 27, 2026, Houston timely appealed, appealing the jury verdict and all related pre-trial and post-trial rulings and orders.  ROA.6080.  This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

Houston filed the notice of appeal based on the district court's filing of the jury verdict and its denial of Houston's post-judgment motions, which indicated finality and appealability given the unique procedural posture of the case. *See* FED. R. CIV. P. 4(a)(4)(A). Specifically, even if this Court were to remand the state law claims, because Plaintiffs-Appellees' state and federal claims present different theories of recovery for a single indivisible injury, Texas's one-satisfaction rule would compel their dismissal. *See Thomas v. Hughes*, 27 F.4th 995, 1018 (5th Cir. 2022) (recognizing that the rule is intended to prevent double recovery for single, indivisible injury).

1

That said, on May 22, 2026, the Plaintiffs-Appellees filed an unopposed

motion for Rule 54(b) certification, which remains pending. FED. R. CIV. P. 54(b).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  The trial court erred in denying Houston's motions for judgment as a matter of law because the circumstances of the traffic accident did not violate substantive due process and because Plaintiffs-Appellees presented no evidence in support of essential elements of her Section 1983 claim.

2.  The trial court erred in denying Houston's motion for new trial, which identified harmful charge errors, evidentiary rulings, and trial by ambush.

## STATEMENT OF THE CASE

### I.   Statement of Facts

The police department of the City of Houston is the fourth largest in the nation.  ROA.7272.  The department employs approximately 5,300 police officers, of whom 1,000 are patrol officers who respond to more than 2 million calls for service each year.  ROA.7272-73.

HPD Officer Christopher Cabrera is a 9-year veteran HPD patrol officer whose formal driver training exceeds the training of the typical citizen driver. ROA.6654, ROA.6595, ROA.6569, ROA.7421, ROA.7412-18.  On December 21, 2021, he started his shift around 6:00 a.m.  ROA.6555.  That morning, he assisted in a "priority two" call regarding a DWI suspect.  ROA.6556.  ROA.7397, ROA.6597.[1]

After transporting the suspect to the downtown Joint Processing Center and then stopping for breakfast, Cabrera headed back to his station to complete the offense report and charges.  ROA.6554-55, ROA.6556.  Cabrera did not activate his siren or lights, which is the standard response to a priority two call.  ROA.7250-51. He remained assigned to the call and was not available to take other police calls for service.  ROA.1120, 1222-23, ROA.6597, ROA.6602.

The station is off of North Shepherd Drive, a six-lane, non-residential street with a speed limit of 35 mph.  ROA.6557.  The flow of traffic on Shepherd

---

[1] Also called "Code 2."

regularly exceeds the posted limit by 20 to 25 mph.  ROA.6637-38.  While driving, Cabrera considered the traffic flow and driving conditions, the weather, the physical attributes of the roadway, and pedestrians, among other factors.  ROA.6599:1-9, 6567.

Cabrera traveled northbound with the flow of traffic.  ROA.6598:8-25. He did not accelerate aggressively.  ROA.6443.  Suddenly, a Cadillac sedan traveling south attempted a left turn across Shepherd, pulling in front of Cabrera. ROA.6602 ("It is an emergency when someone turns into your lane, sir").  A person making a left turn has the duty to yield to oncoming traffic approaching from the opposite direction; the Cadillac driver did not do so.  ROA.7256; TEXAS TRANSP. CODE § 545.132.

The Cadillac driver, Charles Payne Sr. ("Payne Sr."), also did not come to a complete stop before beginning his turn.  ROA.6448.  Moreover, at the time he attempted his turn, his view was obstructed by an SUV that was attempting a turn from the opposite direction and which *was yielding* to oncoming traffic.  ROA.6449. Cabrera's view was partially obstructed by the same SUV.  ROA.6454.

The vehicles collided.  ROA.2785.  Though Cabrera did not realize it at the time, five seconds before impact, his vehicle reached 70 mph for 2.5 seconds. ROA.6563, ROA.6442.

When Cabrera saw the sedan, he braked and turned his wheel to minimize potential harm, and did not intentionally drive into Payne Sr. ROA.6444-46, ROA.7241. If Payne Sr. had stopped for two seconds, the accident would not have occurred. ROA.6448.

Payne Sr. died within the hour, while Cabrera experienced serious but non-fatal injuries. ROA.6591. Medical evidence later revealed that Payne was having a heart attack and had blood glucose so high that it could cause blurry vision. ROA.6803-04, ROA.6816-18.

## II.    Procedural History

The family of Payne Sr. (collectively "Payne") sued in state court against the City of Houston pursuant to the Texas Tort Claims Act ("TTCA"). *See* ROA.150. On December 15, 2023, after Houston moved for summary judgment, ROA.150-314, Payne non-suited and re-filed in federal court, reasserting the TTCA claims and adding a Fourteenth Amendment claim under 42 U.S.C. § 1983 against Houston and Cabrera. ROA.28, 46-54.

On March 19, 2024, the district court granted Cabrera's motion to dismiss. ROA.491. The court held that the "tragic," "pure accident" occurred on a six-lane street "when the Decedent turned into oncoming traffic" and that there was "no Fifth Circuit precedent to establish that a police officer involved in a motor

6

vehicle accident results in the deprivation of one's clearly established constitutional rights." ROA.490.

The court denied Houston's motion as to both the federal and state claims. ROA.491. On April 8, 2024, Houston sought interlocutory appeal based on the denial of Houston's motion as to the TTCA claims. ROA.495. This Court affirmed. *Payne v. City of Houston*, No. 24-20150, 2025 WL 999085, at *1 (5th Cir. Apr. 3, 2025) (unpublished).

On September 6, 2025, Houston moved for summary judgment. ROA.1100. The court denied the motion without analysis. ROA.2751. Houston sought interlocutory appeal as to the TTCA claims and moved to stay the trial of the federal claims. ROA.2755, 2758, 2766. The court denied the stay, ROA.2782, 5530, as did this Court. ROA.5568.

The federal claims proceeded to trial on November 10, 2025. ROA.5635. Houston moved for judgment as a matter of law, which was denied. ROA.5640, 5759. On November 24, 2025, the jury returned a verdict, awarding $13 million in damages. ROA.5770-5771. On December 10, 2025, Payne moved for attorneys' fees. ROA.5812.

On December 17, 2025, Houston filed a renewed motion for judgment, ROA.5907, and a motion for new trial on December 19, 2025, ROA.5919. On

January 23, 2026, the district court denied both motions. ROA.6078. Houston filed a notice of appeal on January 27, 2026. ROA.6080.

On March 19, 2026, the court denied Payne's motion for fees without prejudice and "administratively closed" the case pending the TCTA appeal. ROA.6097.

## SUMMARY OF THE ARGUMENT

This case should never have reached a jury. Car accidents resulting in unintended loss of life categorically fall below the threshold for substantive due process, i.e., conduct that shocks the conscience *in a constitutional sense*. There was never any underlying constitutional violation that could support a *Monell* claim.

Moreover, Payne never established any of the *Monell* elements. While HPD's policies afford officers some discretion, they are facially constitutional. Payne presented no evidence establishing that Houston's police chief was deliberately indifferent to injury-producing constitutional violations or that such deliberate indifference was the moving force for Payne Sr.'s death. Instead, the evidence established that Payne Sr. caused the accident and his subsequent death was the result of complications of a heart attack, namely, that CPR broke his sternum, which then severed his aorta. Because Payne failed to establish the *Monell* claim as a matter of law, the Court should reverse and render judgment that Payne take nothing.

Alternatively, the Court should reverse and remand for a new trial. The court's charge was defective in numerous harmful respects, the most glaring being the court's refusal to decide HPD's policymaker as a matter of law and instruct the jury accordingly. Compounding the charge errors were significant erroneous

evidentiary rulings and unfair surprises that amounted to trial by ambush.

Accordingly, at a minimum, the Court should award a new trial.

## ARGUMENT

**I.    The trial court erred in denying Houston's motions for judgment as a matter of law because the traffic accident did not violate substantive due process and because Payne presented no evidence in support of essential elements of their Section 1983 claim.**

### A.    Standard of Review

Judgment as a matter of law is proper if "a reasonable jury would not have a legally sufficient evidentiary basis to find" for the plaintiff on the issue. FED. R. CIV. P. 50(a).  The court of appeals reviews the denial of a motion for judgment as a matter of law "using the same standard as the district court; factual issues are reviewed only for the presence of substantial evidence supporting the verdict, and legal issues are reviewed *de novo*." *Parkans Int'l LLC v. Zurich Ins.  Co.*, 299 F.3d 514, 517–18 (5th Cir. 2002).  The jury's factual findings must be supported by substantial evidence; that is, "relevant evidence—more than a scintilla but less than a preponderance—that would cause a reasonable person to accept the fact finding." *Echeverry v. Jazz Casino Co.*, LLC, 988 F.3d 221, 228 (5th Cir. 2021) (en banc) (citation omitted).

### B.    Payne's claim fails all required elements of *Monell*.

Payne seeks damages for alleged violations of substantive due process pursuant to 42 U.S.C. § 1983.  Section 1983 creates no substantive rights but merely provides a damages remedy for the deprivation of existing constitutional or federal statutory rights. *Wilson v. Garcia*, 471 U.S. 261, 278 (1985).  The liability standard

11

is rigorous, and *respondeat superior* liability is absolutely prohibited under *Monell v. New York City Dep't of Social Svs.*, 436 U.S. 658 (1978).

Instead, the plaintiff must prove that the allegedly unconstitutional conduct is "directly attributable" to the city itself through "official action or imprimatur." *City of Houston v. Piotrowski*, 237 F.3d 567, 578 (5th Cir. 2001). The plaintiff must prove: (i) a deprivation of a federally protected right caused as the direct result of the execution of an official municipal policy, custom, or practice; (ii) the municipality's final "policymaker" had actual or constructive knowledge of the unlawful policy, custom, or practice; and (iii) the custom, policy, or practice was the "moving force" that directly caused the constitutional deprivation. *See generally id.* at 578-580. The policymaker must be more than a person with *decision-making* authority; the official must possess *final policymaking* authority with respect to the subject matter at issue. *See Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1247 (5th Cir. 1993).

*Monell's* three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski*, 237 F.3d at 578. The three "requirements must not be diluted, for where a court fails to adhere to the rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior*." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998).

As argued in Houston's motions for judgment (ROA.5640, 5907), Payne's claim fails all elements.

### 1. A traffic accident resulting in unintended loss of life does not violate due process in the absence of evidence indicating intent to harm.

The existence of a constitutional violation is a "threshold" issue. *Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009). The Court's first task is to determine "whether plaintiff's harm was caused by a constitutional violation" and, if so, then determine "whether the city is responsible for the violation." *Doe v. Covington County Sch. Bd.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992)). "[W]ithout an underlying constitutional violation, an essential element of municipal liability is missed." *Id.* (citation omitted). Payne's claim fails at this threshold step.[2]

Here, the district court correctly characterized the collision as a "*pure accident*" that occurred while Cabrera was attached to a police activity. ROA.482. The evidence at trial confirms that this was an accident, not a deliberate and abusive decision to deprive a person of his life. In the court below, Houston demonstrated that liability requires intent to harm (as required by *County of Sacramento v. Lewis*,

---

[2] Houston made these same arguments at the pleadings stage, ROA.134-35, and summary judgment stage. ROA.1106-07.

523 U.S. 833 (1998)), while Payne advocated for a lower deliberate indifference standard. Because Payne's claim fails under *either* standard, the court should never have submitted this case to the jury.

> **a) Only conduct that "shocks the conscience" can violate due process—and the accident falls far below this standard.**

The Due Process Clause provides that the state may not deprive a person of "property" or "liberty" without due process of law. U.S. Const. Amend. XIV, § 1. Payne alleges a loss of life caused by a police officer "driving at reckless speeds" to return to the station to complete a report. ROA.2784, ROA.2786. But it is well settled that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849. It is "no reflection on either the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns." *Daniels v. Williams*, 474 U.S. 327, 335 (1986).

The "core of the concept" of due process is protection against "arbitrary action" and the "exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Lewis*, 523 U.S. at 845-46. Due process prevents government from abusing its power or employing it as an instrument of oppression. *Id.* Only the most egregious or brutal conduct can be said to be arbitrary in the constitutional sense. *Id.* at 847-47 .

14

In *Lewis*, the Court held that a high-speed chase resulting in death did not violate due process because there was no "intent to harm" the individual or worsen their plight. *Id.* at 853-54. Due process is concerned with "*deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Id.* at 849, citing *Daniels*, 474 U.S. at 331 (emphasis in original). It "does not guarantee due care on the part of state officials." *Id*. *Id*.

Accordingly, "preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Lewis*, 523 U.S. at 850. Conduct "intended to injure in some way" is "the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849. Whether conduct lacking intent can rise to the level of conscience-shocking is "a matter for closer calls." *Id.* *Lewis* identified just one other line of cases – those involving denial of medical care to jailed persons who have lost the freedom to care for themselves. *Id.* at 849-51 (citations omitted). Caring for an inmate's welfare "is not only feasible but obligatory under [such] a regime." *Id.* at 851. When prison officials have "extended opportunities" to help inmates but respond with "protracted failure even to care," "indifference is truly shocking." *Lewis*, 523 U.S. at 851-52, 853.

In contrast, in the "markedly different" circumstance of a police chase that requires an officer's instant judgment, "even precipitate recklessness fails to

inch close enough to harmful purpose to spark the shock that implicates" constitutional protections. *Lewis*, 523 U.S. at 853-54; *see e.g., Estate of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 244 (5th Cir. 2025) ("[r]amming a suspect's vehicle to end a pursuit" was, at most, "reckless endangerment").

Here, Cabrera, during daylight hours, drove on a six-lane urban street where the flow of traffic was typically 50 to 55 mph. ROA.6637-38. His speed varied but briefly reached 70 mph for 2.5 seconds. ROA.6563, ROA.6442. Although Cabrera was not pursuing a suspect as in *Lewis*, he was assigned to a priority-two call and was fulfilling police responsibilities that, once completed, would enable him to respond to other calls for service.[3] ROA.7372 (call slip). These circumstances are categorically different from prison cases in which officials know of inmates' medical needs and responded with protracted failure to provide care.

Moreover, Cabrera had to make a split-second decision when the sedan suddenly made an illegal left turn into his path. Plaintiff's accident reconstructionist, Irwin, testified that Cabrera "couldn't have reacted much quicker…he only had two seconds and he used one," ROA.6454, while Payne's police practices expert, Darcy, admitted that Cabrera did not intentionally drive into the sedan and, in fact, the evidence shows that Cabrera swerved and slammed on the brakes and tried go behind

---

[3] Cabrera testified that patrol officers face "high demand" to protect the public and "getting to responses in a timely manner." ROA6585-86.

16

the Cadillac.    ROA.6444-46, ROA.7241:10-14. Payne presented no evidence supporting any inference of a purpose to cause harm.

> **b)      Payne's due process claim fails even if one views Cabrera's conduct through the lens of deliberate indifference.**

Payne argued that the "purpose to cause harm" standard applies only in pursuit cases and that a lower standard— "deliberate indifference"—applies to non-emergency cases.  ROA.5682-83, ROA.6782-83. But Payne's claim fails even under a deliberate indifference standard.

In *Daniels v. City of Dallas*, 272 F.App'x 321 (5th Cir., March 28, 2008) (unpublished), this Court found that exceeding the speed limit during a non-emergency did not violate due process whether analyzed under an intent-to-harm or deliberate indifference standard.  The officer in *Daniels* allegedly sped through an intersection at night, swerved around a stopped car, and hit and killed a pedestrian. *Id.* at *322.  The officer may have been grossly negligent, but he was not deliberately indifferent, which would require showing "that the official knew an accident was imminent but consciously and culpably refused to prevent it." *Id.* at *323 (quoting *Hill v. Shobe*, 93 F.3d 418 (7th Cir. 1996)).  "It is insufficient to show that a public official acted in the face of a recognizable but generic risk to the public at large." *Id. Daniels* cited with approval *Smith v. Walden*, 228 F.3d 408 (5th Cir. 2000) (per curiam) (unpublished), which affirmed a similar ruling despite allegations that a

police officer sped without lights or siren in response to a non-emergency. *Daniels*, 272 F.App'x at \*323.

Payne presented no evidence that Cabrera knew an accident was imminent and consciously and culpably refused to prevent it. ROA.5652-53, ROA.5909-10.

Instead, Payne focused on Cabrera's speed several seconds prior to Payne Sr.'s left-hand turn. But Cabrera's speed ***before*** the collision at most indicates "a recognizable but generic risk to the public at large." *Daniels*, 272 F.App'x at \*323.

Payne also pointed to evidence that an Internal Affairs Division investigator found that Cabrera drove at a speed that was "unsafe," ROA.6603, but this argument merely tracks traditional tort law and generic risk. Payne's claim sounds in negligence, which is "categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849. Because there is no underlying constitutional violation, *Monell* liability is foreclosed as a matter of law. This Court should reverse and render judgment that Payne take nothing.

**2. Payne presented no evidence that Houston's final policymaker promulgated and/or was deliberately indifferent to an unconstitutional policy or custom.**

There is no legally sufficient basis for a reasonable jury to find that HPD's Chief of Police had actual or constructive knowledge of an unlawful policy

that was the "moving force" directly causing a constitutional deprivation. ROA.5644-45, ROA.5911-12. Houston's potential liability under *Monell* turns solely on the actions of its "final policymaker," which is the official or officials who have final authority under state law to establish municipal policy regarding the subject matter at issue. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988). This is a question of law for the court to decide by reference to state law and local law. *Id.* at 125. The trial court must identify the final policymaker "*before the case is submitted to the jury.*" *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (emphasis in original). Here, the district court refused to identify Houston's final policymaker and sent the case to the jury without instructing them on this essential element.[4] Judgment as a matter of law should have been granted.

### a) As a matter of law, HPD's police chief is the relevant final policymaker.

A *de novo* review of this purely legal question shows that the relevant body of law is the Houston Code of Ordinances which vests the police chief with final policymaking authority over HPD. *See* ROA.3202-03; HOUSTON, TEX., CODE OF ORDINANCES, §§ 34–22;[5] *see Jones v. City of Hutto*, 154 F.4th 332, 337 (5th Cir. 2025) (identifying the policymaker "is a question of state law, aided by looking at

---

[4] The court's refusal to properly instruct the jury is addressed in Section II(B).

[5] The Court may take judicial notice of city ordinances even if not in the trial record. *Vela v. City of Houston*, 276 F.3d 659, 682 (5th Cir. 2001); *see* HOUSTON, TEX., CODE OF ORDINANCES, §§ 34–22, *available at* https://library.municode.com/tx/houston/codes/code_of_ordinances.

19

relevant municipal charters"). No ordinance permits any other legal conclusion. Moreover, the Supreme Court has "cautioned" that a "'court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.'" *Doe v. Dallas Indep. School Dist.*, 153 F.2d 211, 216 (5th Cir. 1998) (citing *Praprotnik*, 485 U.S. at 126).

Houston's ordinances direct the Chief to "promulgate administrative rules and regulations of the police department, with the approval of the mayor" and distribute them to all officers.[6] As the final policymaker, the Chief promulgated General Order 400-07 which requires all employees to drive "in a safe and responsible manner" and to comply with the laws of the State of Texas. ROA.7383. General Order 600-01 requires officers on "priority two" calls to drive "with due regard for the safety of themselves, fellow officers, and citizens." ROA.7400-01, ROA.7243:25-7247:24.

Nor is there evidence that the Chief delegated final policymaking authority. As an initial matter, and contrary to Payne's assertion below (ROA.5685), whether a delegation occurred is not a question of fact for the jury; the trial judge must make this determination as a matter of law. *See Praprotnik*, 485 U.S. at 130; *Gros v. City of Grand Prairie*, 181 F.3d 613, 617 (5th Cir. 1999). Here, Houston's

---

[6] HOUSTON, TEX., CODE OF ORDINANCES, §§ 34–23, 34–24.

20

ordinances constrained the Chief's ability to delegate,[7] and Payne adduced no evidence of delegation.

Payne initially pleaded that the Chief was HPD's final policymaker, ROA.30, but abandoned this contention in the Joint Pretrial Order,[8] focusing instead on Captain Isaac Duplechain. Duplechain previously held a risk management position that involved drafting HPD policies "in the sense that I created the drafts and submitted them to the chain of command." ROA.6607. Duplechain performed research and would "type up the initial drafts as being instructed by the chief of the police in the chain of command. They would tell me what they wanted the policy to be …." ROA.6635. But Duplechain never served as chief or assistant chief, and there is no evidence that the Chief ever delegated final authority to him to enact or revise general orders for the department. ROA.6634-35.

Whether Duplechain was a "policymaker" in the *scrivener* sense, there is no evidence that he was a *Monell* policymaker with final authority to set policy.

---

[7] Houston's ordinances enable the Chief to delegate policymaking authority in times of absence, but the delegation cannot go lower in the chain of command than assistant chief. HOUSTON, TEX., CODE OF ORDINANCES, §§ 34–24. Even then, the delegation confers only operational discretion, not policymaking power. *See generally Valle v. City of Houston*, 613 F.3d 536, 543-44 (5th Cir. 2010).

[8] Because both parties signed the JPO, Payne effectively waived her *Monell* claim by identifying the wrong policymaker in it. ROA.2788. *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998) (recognizing signed JPO supersedes pleadings).

> **b)** **Payne presented no evidence connecting Houston's Chief to an unconstitutional policy or custom.**

There are two paths of proof to show an unconstitutional policy under *Monell:* (1) a policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by a final policymaker or (2) a "persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Pineda v. City of Houston*, 291 F.3d 325, 328-29 (5th Cir. 2002). The plaintiff must specifically identify and separately analyze each policy which allegedly caused constitutional violations. *Piotrowski,* 237 F.3d at 579. When prior incidents are used to show a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id.* (citation omitted). A pattern requires "similarity and specificity." *Peterson*, 588 F.3d at 851.

> **(1)** **HPD's actual, official policies are facially constitutional.**

Under *Monell*, an official, written policy is facially *un*constitutional if it "affirmatively allows or compels unconstitutional conduct." *Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 309 (5th Cir. 2023). When a policy merely "commits some decisions to an individual officer's on-the-scene discretion" or

22

"gives some detailed instructions while omitting others," it does not affirmatively allow or compel unconstitutional conduct. *Id.* Thus, in *Verastique v. City of Dallas*, 106 F.4th 427, 435 (5th Cir. 2024), this Court rejected a claim based on a policy that gave officers discretion to conduct arrests as they saw necessary to quell civil unrest. The policy did not prevent officers from exercising their discretion in a constitutionally valid manner. *Id.*

HPD's general orders expressly require drivers to drive with appropriate regard for the safety of all persons in both emergency and non-emergency circumstances. ROA.7383 ("Employees operating a City vehicle shall do so in a safe and responsible manner. Employees shall operate motor vehicles in accordance with the applicable laws of the state of Texas and the City of Houston."), ROA.7400-01 ("When responding to priority 'E,' one, or two calls for service with the use of emergency equipment, officers shall drive with due regard for the safety of themselves, fellow officers, and citizens."), ROA.7408 ("an officer must always operate a vehicle using due care."), ROA.7409 ("when responding to any call-for-service or other type of event, officers shall drive with due caution and with due regard for the safety of themselves, fellow officers, and citizens."), ROA.7410 ("it is of the utmost importance that all officers drive with due care at all times, regardless whether responding to an emergency call, en route to a call fo[r] service, or during routine patrol"), ROA.7410 ("Officer[s] shall always drive at a speed that

23

is safe and appropriate for the situation, taking into consideration the road conditions and the volume of vehicular and pedestrian traffic, among many other factors with the need to arrive safely being paramount.").[9] Darcy conceded as much. ROA.7243-47.

HPD's policies do not *compel* driving at reckless speeds or *prohibit* officers from exercising their discretion in a constitutionally valid manner. *See* ROA.7377-86, ROA.7394-410 (Defendant's exhibits 13, 16, 20, 22, 23). A written policy is not facially unconstitutional just because it leaves out detailed guidance that might have averted a constitutional violation. *Edwards,* 70 F.4th at 309. Moreover, when drafting policies, "[i]t is in the very nature of deliberative bodies to choose between and among competing policy options, and yet a substantive due process violation does not arise whenever the government's choice prompts a known risk to come to pass." *Schroeder v. City of Fort Thomas*, 412 F.3d 724, 729 (6th Cir. 2005), citing *Scheurer v. Rhodes,* 416 U.S. 232, 241 (1974). This is especially true with policies on driving. "[B]ecause the accepted premise of all speed-limit debates is that lower speed limits will lead to fewer accidents and fewer traffic fatalities," one could argue "that *all* governing bodies act with deliberate indifference" when they adopt one proposal over another. *Id.* at 729 (emphasis in original). But "it is

---

[9] Darcy admitted that similar language "exists in a lot of policies for a lot of police departments." ROA.7260-61.

24

not a tort for government to govern" by picking one policy over another.[10]  *Id.* (citation omitted).

The suggestion that a drive-with-due-care policy is constitutionally deficient is not only legally incorrect, it runs counter to the rules of the road that apply to all citizens.  Texas law requires all citizens to drive at a speed that is "reasonable and prudent under the conditions and having regard for actual and potential hazards then existing."  TEX. TRANSP. CODE § 545.351.  Duplechain testified that officers must "evaluate the totality of the circumstances," which includes "the roadway conditions, the density of traffic, the using their best knowledge, using the customary flow of traffic.  Relying upon their lines of sight in order to make prudent decisions about driving." ROA.6624.

But while traveling in excess of the posted speed limit is *prima facia* evidence that a ***civilian*** was driving a speed that was not reasonable and prudent, Texas law exempts from speed limits both patrol officers and officers responding to emergency calls.  *Compare* TEX. TRANSP. CODE § 545.351, *with* §§ 545.365, 546.001-02.

Ignoring these statutory distinctions, Payne argued that Houston's policy was unconstitutional because it "permitt[ed] the City's officers to disregard

---

[10] Thus, in *Schroeder*, the city was not deliberately indifferent when it failed to heed citizen warnings about excessive speeds in a particular area and failed to lower the speed limit or enforce the existing speed limit, resulting in a child's death.  412 F.3d 724, 729.

posted speed limits when not responding to an emergency." ROA.6025 at ¶19. This is a matter of *state law*, not departmental policy. *See* TEX. TRANSP. CODE § 545.365, ROA.6636 (Duplechain testimony). Moreover, by emphasizing speed limits under state law, Payne's argument effectively strips substantive due process of its constitutional dimension. *Monell* liability does not turn on state law; it turns on federal constitutional principles which uniquely examine whether the conduct is shocking *in a constitutional sense*. *See generally Lewis,* 523 U.S. at 850, and text, *supra*, in Section I.B.1(a); *see, e.g., Collins*, 503 U.S. at 129 (even if city worker died because the city failed to provide warnings and training required by a Texas statute, the failure was not "arbitrary in the constitutional sense").

Because Houston's policies are facially constitutional, Payne was required to plead and prove that the policy was promulgated with "deliberate indifference to the known or obvious consequences" that constitutional violations would result. *Piotrowski*, 237 F.3d at 579. Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an *intentional choice*, not an unintentionally negligent oversight. *See Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018).

In response to Houston's motion for judgment, Payne pivoted on the policymaker element, claiming that they looped in the Chief and proved deliberate indifference through Duplechain. ROA.5677. Duplechain testified about his

understanding of HPD's policies and the Department's expectation that officers will continually "evaluate the totality of the circumstances" and make "prudent decisions" when driving. ROA.6624. Duplechain was asked about a circular on safe driving that the Chief signed on December 30, 2021, after the accident. ROA.6630. The circular addressed "due care" and driving at a speed that is "safe and appropriate" for the conditions. Although Duplechain testified that an officer reasonably could—consistent with the December circular—drive 70 mph down North Shepherd under the circumstances that Cabrera faced, Duplechain also testified that it would be "quite rare" for such speed to be reasonable on any other street under different conditions. ROA.6632-33, ROA.6440. But as Payne subsequently admitted, this is not a matter of department policy but a reflection of Texas law that applies universally to all drivers. *See* Appellees' Br. 25-20492 at 18 (recognizing that under Texas law, all drivers have a duty to drive at a speed that is reasonable and prudent for the conditions).

> **(2)** **Payne presented no legally sufficient evidence showing a widespread custom or deliberate indifference by the final policymaker.**

A city cannot be held liable for an unwritten custom unless the final policymaker has actual or constructive knowledge of an injury-producing custom. *Pena v. City of Rio Grande*, 879 F.3d 613, 623 (5th Cir. 2018). The relevant question "is not whether a municipality is aware of and indifferent to *the existence of a*

27

*custom;* rather, it is whether the municipality is indifferent 'to the risk that a violation of a particular constitutional ... right will follow' from that custom." *Boyd v. City of Houston, Tex.*, 548 F.App'x 100, 104 (5th Cir., 2013) (unpublished) (emphasis in original). Courts must consider "contextual factors" such as department size, which help evaluate "whether an alleged department-wide pattern is so obvious as to impart constructive notice." *Verastique,* 106 F.4th at 434 (citation omitted). "Absent those contextual factors, it is *impossible* to identify the existence of a pattern—much less one that imparts constructive notice." *Id.* (emphasis in original); *see, e.g.*, *Pineda*, 291 F.3d at 329 (holding that 11 incidents of warrantless searches would not support a pattern in one of the nation's largest cities); *Peterson*, 588 F.3d at 852 (27 incidents of excessive force over four years in a force with 1,500 officers did not reflect a pattern).

Payne presented no evidence to suggest that the Chief had constructive knowledge of any such pattern. Constructive knowledge may be established by showing that the alleged violations were the subject of prolonged public discussion or publicity, but cannot be established merely by pointing to information in city files. *Pineda*, 291 F.3d at 330. In *Pineda*, this Court rejected the argument that a city council would have constructive knowledge of unlawful searches if the city possessed offense reports in referencing the warrantless searches. *Id*. "This is

28

functionally the *respondeat superior* regime the Supreme Court has repeatedly rejected." *Id.* at 330-31.

But this is precisely how Payne presented the *Monell* claim. Payne submitted an 8-inch binder of raw data from a satellite-based Automated Vehicle Location (AVL) system showing coordinates and speeds for hundreds of patrol vehicles each day for a single 30-day period (November-December 2021). ROA.7207-08. Payne did not demonstrate how an unconstitutional pattern could be gleaned from this data. The data ***does not identify*** whether each officer was on a freeway or residential street, an emergency call (and if so, the priority level of the emergency), describe the customary flow of traffic or other conditions, or state whether there was a crash or injury of any sort. ROA.7212. Absent these contextual factors, "it is *impossible* to identify the existence of a pattern—much less one that imparts constructive notice." *Verastique,* 106 F.4th at 434 (emphasis in original). A snippet from Payne's exhibit shows a massive, context-less list of numbers:

| Address | 4600 N Shepherd Dr | | | 11/26/2021 - 12/26/2021 | 95410631 | 29832550 | 10560' | |
|---|---|---|---|---|---|---|---|---|
| Date | hhmmss:sss | Unit Info | Type | UnitID | Longitude | Latitude | GPS Azimuth | GPS Velocity |
| 20211126 | 000005:004 | A=P:U=MD5476: | AVL2 | 6B43N | -95.420767 | 29.857137 | 1340 | 52000 |
| 20211126 | 000018:999 | A=P:U=MD5476: | AVL2 | 6B43N | -95.418285 | 29.855017 | 1330 | 52000 |
| 20211126 | 000033:638 | A=P:U=MD5476: | AVL2 | 6B43N | -95.415832 | 29.852872 | 1350 | 46000 |
| 20211126 | 000104:656 | A=P:U=MD5476: | AVL2 | 6B43N | -95.414302 | 29.851080 | 3390 | 0 |
| 20211126 | 000139:594 | A=P:U=MD6464: | AVL2 | 3B35N | -95.420203 | 29.840345 | 860 | 0 |
| 20211126 | 000232:665 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.431520 | 29.812545 | 790 | 73000 |
| 20211126 | 000242:751 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.428045 | 29.812683 | 890 | 75000 |
| 20211126 | 000252:659 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.424437 | 29.812690 | 890 | 77000 |
| 20211126 | 000302:659 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.420910 | 29.812697 | 890 | 74000 |
| 20211126 | 000312:658 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.417470 | 29.812708 | 890 | 73000 |
| 20211126 | 000322:806 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.414058 | 29.812733 | 890 | 74000 |
| 20211126 | 000326:120 | A=P:U=MD5417: | AVL2 | 3B51N | -95.379250 | 29.822957 | 3440 | 59000 |
| 20211126 | 000332:656 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.410697 | 29.812770 | 890 | 70000 |
| 20211126 | 000338:756 | A=P:U=MD5417: | AVL2 | 3B51N | -95.379987 | 29.826008 | 3490 | 57000 |
| 20211126 | 000343:642 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.407112 | 29.812810 | 890 | 72000 |
| 20211126 | 000353:638 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.403737 | 29.812850 | 890 | 72000 |
| 20211126 | 000354:745 | A=P:U=MD5417: | AVL2 | 3B51N | -95.380758 | 29.828947 | 3390 | 39000 |
| 20211126 | 000403:793 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.400380 | 29.812892 | 890 | 72000 |
| 20211126 | 000412:762 | A=P:U=MD5417: | AVL2 | 3B51N | -95.382390 | 29.831498 | 3250 | 40000 |
| 20211126 | 000414:801 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.396757 | 29.813050 | 800 | 73000 |
| 20211126 | 000424:640 | A=P:U=MD5476: | AVL2 | 6B43N | -95.414302 | 29.851080 | 3390 | 0 |
| 20211126 | 000424:690 | A=P:U=MD5093: | AVL2 | 96Z14 | -95.393503 | 29.813775 | 810 | 73000 |
| 20211126 | 000430:514 | A=P:U=MD5926: | AVL2 | 3B54N | -95.382298 | 29.846927 | 1010 | 21000 |

ROA.3456. The raw AVL data does not support any inference of a department-wide pattern of unconstitutional conduct in a department of thousands responding to 2 million calls for service each year. ROA.7212, ROA.7273. The AVL data is legally insufficient to support constructive knowledge. The data is even more diffuse and scattered than the offense reports in *Pineda*.[11] Nor was there testimony or other evidence indicating that the Chief actually was aware of this document or its data, as it was generated in response to Payne's discovery requests. ROA.7172-73.

In addition to the AVL data, Payne claimed that "other IAD reports" and "hundreds, if not thousands" of "other incidents" supported a finding of a policy

---

[11] Payne argued that Houston could have audited the AVL data. Duplechain testified that auditing the high-volume data would be resource-prohibitive. ROA.6640-45. But the Constitution "does not mandate that law enforcement agencies maintain" particular equipment or technology. *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992). The AVL data does not implicate due process as local governments are permitted to "take account of competing social, political, and economic forces" when allocating resources. *Collins*, 503 U.S. at 128-29.

30

of "reckless and deliberately indifferent speeding" by officers. ROA.6025. These arguments are unavailing.

First, *no other IAD reports of any kind were admitted into evidence.* ROA.7219 (offering other IAD reports), ROA.7226 (sustaining Houston's objection).

Second, for there to be any inference of deliberate indifference, the other instances must involve sufficiently similar injury-producing **constitutional violations**. ROA.5914-15, ROA.5648. At trial Payne referred to **just one other** prior injury-producing accident that was **dissimilar**. ROA.7253-54, ROA.7271-72.

Third, Payne cannot establish a department-wide custom based solely on Cabrera's driving. *See Verastique,* 106 F.4th at 432-33 (rejecting claim based on prior incidents involving a single officer;); *Fraire v. of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir. 1992) (recognizing a city's custom or policy authorizing or encouraging police misconduct cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident). Moreover, because there was no evidence that other constitutional violations were brought to the attention of the policymaker, there can be no deliberate indifference as a matter of law.

31

> **c)**    **Payne's failure to train, supervise, and discipline theories are legally untenable because there is no evidence of deliberate indifference.**

Payne's joint pretrial order asserted the following theories:

- The policy "permits officers to drive at whatever speed they see fit including at well over double the speed limit no matter the reason."

- The City "trained [officers] to drive in this manner and the City has no supervision policy to ensure that their officers are driving with due regard to the safety of others."

- The policy encouraged through the "lack of any deterrence or auditing system to monitor the officer's driving speeds" and officers knew "that they will not be disciplined for driving over the speed limit or driving at reckless speeds."

- The City "has a clear lack of training, supervision, and discipline as officers once they reach the field are taught to drive at reckless speeds with deliberate disregard to the safety of citizens and their supervisors encourage those actions pursuant to the policies and practices of the City."

ROA.2788.

All failure-to-act claims, including failure to train, supervise and discipline, involve the same basic elements: inadequacy, deliberate indifference, and causation. *See Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023). A pattern of similar constitutional violations is ordinarily necessary to demonstrate deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Verastique*, 106 F.4th

32

at 432. Because Payne's trial evidence showed no pattern of similar instances, there can be no deliberate indifference as a matter of law.

### (1) Training

When officers have received training required by state law, the plaintiff must show that the legal minimum of training was inadequate. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381-82 (5th Cir. 2010) (citation omitted). Plaintiff must describe the deficiencies with specificity. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). Here, the evidence shows that HPD complied with all state law requirements from the Texas Commission on Law Enforcement (TCOLE). Cabrera testified that he exceeded the minimum TCOLE training requirements. ROA.6594-95. The evidence further established that HPD requires officers to complete their TCOLE-mandated in-service training in half the time TCOLE permits. ROA.6593-94. Payne presented no evidence that the TCOLE requirements are inadequate, which "counsel[s] against a 'failure to train' finding." *Id*. at 171.

Beyond TCOLE, Duplechain testified that the Vehicular Crimes Division keeps a database to track the contributing factors to officer crashes and then trains specifically on those factors. ROA.6646-47. Even if Duplechain were the policymaker, he testified that he never observed in this data a pattern of officers driving excessive speeds. ROA.6647-68.

33

Finally, Cabrera testified that he was trained to consider the weather and the customary flow of traffic as factors in deciding a reasonable and prudent speed.  ROA.6599:1-9.

### (2)    Supervision

Payne's supervision theory presupposes the only way to supervise officers is real-time AVL data monitoring or auditing.  ROA.7204-05.  But the evidence established HPD supervises officers in other ways because AVL monitoring and auditing is resource-prohibitive.  ROA.6640-45.  Duplechain testified that patrol sergeants retained the capability to directly observe and supervise their patrol officers, and HPD elected monthly body-worn camera audits to ensure compliance with department policy.  ROA.6644-45.

### (3)    Discipline

Payne abandoned her discipline theory by not requesting a jury instruction.  ROA.5720-21.  FED. R. CIV. P. 49(a)(3).  Nevertheless, the evidence related to discipline came only from Cabrera and Duplechain.  ROA.6595.  Cabrera testified that he knew he could be subject to discipline for violating policy with respect to operating motor vehicles.  ROA.6595.  Additionally, after this accident he served a 45-day suspension—one level below termination—and completed 16 additional hours of training.  ROA.6596, ROA.6596.

34

**3.**      **Payne presented no legally sufficient evidence establishing that a city policy or custom was the "moving force" behind the alleged constitutional deprivation.**

The court should have granted Houston's motion for judgment due to Payne's failure of proof on the final *Monell* element: moving force causation.

      **a)**      **The moving force standard demands a direct link between the entity's policy and the injury; *Monell* prohibits ordinary proximate cause.**

Payne's theory turns on ordinary state-law tort principles: "but for" the department's failure to provide specific instructions to officers on speed limits, there would have been no collision.  But municipal liability requires much "more than a mere 'but for' coupling between cause and effect."  *Valle*, 613 F.3d at 546 (citation omitted).  The entity's policy or custom must be the "moving force" that caused a constitutional violation.  *Id*.  This is a "demanding" standard that requires "a direct causal link between the [ ] policy and the constitutional deprivation."  *Mansfield v. Williamson County*, 30 F.4th 276, 279 (5th Cir. 2022) (citations omitted).  "[R]igorous standards of culpability and causation must be applied" to guard against *respondeat superior* liability.  *Id*.

The standard is well illustrated by *Mansfield* in which the plaintiff claimed that he pleaded guilty to a sex offense only to learn that prosecutors had lied during plea negotiations to avoid producing exculpatory evidence.  The plaintiff argued that the department's closed-file policy "enabled the prosecutors' lies" which

35

violated his due process rights. This Court rejected liability, explaining that a "system that fails to prevent lying is not necessarily one that causes lying." *Id.* at 280.

Similarly, HPD requires officers to exercise due care and consider traffic conditions. Payne contends that this policy allowed Cabrera's "dangerous driving." But allowing something is not the same as causing something. Even assuming HPD's policy "enabled" Cabrera's conduct, moving force causation is absent as a matter of law.

This conclusion is further supported by Cabrera's testimony that he was unaware of any policy permitting reckless driving. To establish that the custom or policy was the moving force, Payne had to adduce evidence that Cabrera was aware of the policy. *James v. Harris Cnty.*, 577 F.3d 612, 618 (5th Cir. 2009) ("A reasonable jury could not find that the alleged policy was the moving force behind Wilkinson's alleged excessive force, when there was no evidence that Wilkinson had knowledge of such policy."). Payne produced no such evidence; instead, Cabrera testified to his understanding that he was required to obey all speed limits. ROA.6583:18-25, ROA.6584 ("We do have to follow speed limits in due regards to the safety."), ROA.6585.

Cabrera also testified that he was not aware of any widespread custom of officers driving at excessive speeds when not responding to an emergency call.

36

ROA.6591:21-24.  Nor did he perceive that he was authorized to drive a city vehicle recklessly.  ROA.6590.  The Court should enter judgment as a matter of law in Houston's favor.

> **b)     Payne Sr. caused the accident while failing to yield the right of way to oncoming traffic while making a left turn with an obstructed view.**

Payne's evidence shows that the true cause of this accident was Payne Sr.'s illegal left turn when his view was obstructed and he was medically impaired. ROA.6449.  The evidence shows:

- Irwin admitted that if Cabrera had remained at 70 mph—but had not made the split-second decision to turn his vehicle when Payne suddenly appeared—the accident would not have occurred.  ROA.6448.  In other words, speed by itself did not cause the collision.

- Irwin testified that Payne likely would not have seen a "full vehicle," suggesting Payne still could have seen part of Cabrera's vehicle before starting his turn.  ROA.6438-39.

- Seven of Payne's witnesses echoed state law that a party making a left turn has a duty to yield to oncoming traffic. TEX. TRANSP. CODE § 545.152;  ROA.6489,  ROA.6683-84,  ROA.6704-05,  ROA.6738, ROA.7290-91, ROA.7306-07, ROA.7255-56.

- Two family members said if their view was blocked by another car, they would wait until that car moved before attempting the left turn. ROA.6726, ROA.6738-39.

- Irwin admitted that if Payne Sr. had stopped for just 2 seconds the accident would not have occurred. ROA.6448.

- Dr. Totz testified that the autopsy showed that Payne Sr. had a blood glucose of 502, which would have caused blurry vision. ROA.6816-18.

In short, factors *other than HPD's policy* caused the accident.

### c)    Payne Sr. died from complications of a heart attack.

A plaintiff seeking to recover on a wrongful death claim under § 1983 must prove that the defendant's unconstitutional actions more likely than not caused the decedent's death—not just that they reduced the decedent's chance of survival by some lesser degree. *Slade v. City of Marshall, Tex.*, 814 F.3d 263, 264-65 (5th Cir. 2016).

Payne did not meet that threshold here; overwhelming evidence shows that Payne Sr. suffered a fatal "widow-maker" heart attack before or at the time of the collision. ROA.6803, ROA.6825-26. The heart attack was evident on EKG taken by EMS. ROA.6804. Payne presented no evidence that the heart attack was

38

caused by the collision[12] rather than by Payne Sr.'s severe coronary artery disease, which included 90% stenosis (narrowing) in his artery. ROA.6809-10, ROA.7126, ROA.6808. In fact, this was his second heart attack. ROA.6807, ROA.6810. The EKG reflected an acute heart attack in the front and lateral part of his heart. Dr. Totz testified that, "if the pumping part of your heart goes bad, fluid will back up into the lungs, you will get congestive heart failure. And we know from the autopsy that Mr. Payne's lungs were full of fluid, suggestive that he was having an acute heart attack." ROA.6807-08. Individuals rarely survive this kind of heart attack in the field. ROA.6810.

Moreover, after the collision, CPR broke his sternum, which transected his aorta. ROA.6810.[13] A transected aorta is uniformly fatal in the field. ROA.6821, ROA7141. Because the evidence shows that Payne Sr. continued to have a pulse and was combative with the ambulance crew for nearly 30 minutes after the collision and because he had limited blood in his chest cavity on autopsy, no

---

[12] The court sustained Houston's objection when Payne's counsel asked medical examiner Dr. Ross whether an accident could have triggered a heart attack or cardiac arrest. ROA.7130. Dr. Ross ultimately admitted she could not refute that Payne Sr. was having a heart attack or exclude the possibility that he was having a heart attack prior the collision. ROA.7140.

[13] In this respect, the evidence is not inconsistent with Dr. Ross's conclusion that the cause of death was blunt force trauma. ROA.7126. Hence, even crediting this conclusion, the jury could not reasonably assign the collision as the source of the blunt force trauma, rather than CPR. While Dr. Ross noted other injuries that she believed were sustained in the collision, the aortic transection was the only injury she described as fatal. ROA.7141.

reasonable juror could have believed that his aorta was severed during the collision itself.  ROA.6810-16, ROA.6821-24, ROA.6832.

The medical examiner's testimony that his aorta was transected as a result of the collision is physically impossible and the "rapid deceleration" theory the medical examiner offered did not jibe with the mechanism of this particular crash.  ROA.7119-20 (Ross testimony), ROA.6828-29.  Nor could the jury reasonably have believed the medical examiner's testimony that Payne Sr. did not suffer a heart attack. ROA.7129.  The heart attack was evidenced on the EKG, which she simply did not review before reaching her conclusions in her autopsy. ROA.7139-40.  No reasonable juror could have believed that Payne's death resulted from any HPD policy as opposed to a heart attack caused by long-standing artery blockage and a fatal aortic transection that unfortunately occurred during the EMT's last-ditch efforts to save him through CPR.

## II.     The trial court erred in denying Houston's motion for new trial due to harmful charge errors, evidentiary rulings, and trial by ambush.

### A.     Standard of Review

Denial of a motion for new trial is review for an abuse of discretion. *Holmes v. Reddoch*, 117 F.4th 309, 319 (5th Cir. 2024) (citation omitted).  The court of appeals "must affirm the verdict unless the evidence—viewed in the light most favorable to the jury's verdict—points so strongly ...  in favor of one party" that reasonable people could not arrive at a contrary conclusion.  *Id.*  (citation omitted).

The court of appeals will draw all inferences in the light most favorable to the verdict. *Trabucco v. Rivera*, 141 F.3d 720, 727 (5th Cir. 2025).

**B.　The district court erroneously charged the jury, and the erroneous instructions affected the outcome of the case.**

**1.　Standard of Review**

The court of appeals reviews challenges to jury instructions for abuse of discretion. *Trabucco*, 141 F.4th at 730. The party challenging the instructions "must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the instructions properly guided the jury in its deliberations." *Id.* at 730 (quotation omitted). The court "will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law." *Id.* (citation omitted). Further, the court will not reverse if it determines, "based upon the entire record, that the challenged instruction could not have affected the outcome of the case." *Id.* (quotation omitted).

**2.　The court committed reversible error in refusing to instruct the jury on the identity of Houston's final policymaker.**

The jury charge must "clearly instruct[ ] jurors as to *the principles of law applicable to the factual issues confronting them*." *U.S. v. Hamilton*, 46 F.4th 389, 397 (5th Cir. 2022) (emphasis added); *Kanida v. Gulf Coast Med. Personnel*, 363 F.3d 568, 580 (5th Cir. 2004) (same). A critical principle of law applicable to this case is the identity of the final policymaker, yet the court's charge identified no specific policymaker, leaving the jury with zero guidance. Identification of the final

policymaker is "a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett*, 491 U.S. at 737 (emphasis in original).

The court harmfully erred when it refused Houston's request to instruct the jury that the Chief is Houston's final policymaker. ROA.5700 (Houston's proposed instruction identifying Chief), ROA.6849-51. **Because the instructions did not identify the policymaker, they allowed the jury to find liability without finding that the policymaker caused the injury.** They effectively allowed the jury to impose *respondeat superior* liability.

To preserve error, the party must object on the record and provide the grounds for the objection. Fed. R. Civ. P. 51(c). The court's refusal to grant a party's requested instruction constitutes reversible error "only if the instruction 1) was a substantially correct statement of law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired" the party's ability to present their claim or defense. *Kanida*, 363 F.3d at 578; *Trabucco*, 141 F.4th at 731 (discussing *Kanida*).

### a)    Houston's request correctly stated the law.

Houston requested that the court instruct the jury that Houston's liability hinges on the actions of the "Chief of Police." ROA.5737, 5744.

As discussed in Section I.B.2.(a), *supra*, identification of the policymaker is a question of state and local law, and Houston Ordinances provide that the Chief is HPD's final policymaker.

### b) Houston timely objected and later moved for new trial.

Under *Piotrowski,* the municipality must "insist[]" on proper identification of the city's responsible policymaker.  237 F.3d 567, 578-79 & n.19.  Houston did so.  ROA.6848-51.  Citing *Piotrowski* and *Valle*, counsel explained that "under local ordinance … the chief of police is the policymaker."  ROA.6848-50.  Houston timely moved for new trial. ROA.5919, ROA5926-27.

### c) Houston's requested instruction "was not substantially covered" in the charge as a whole.

The court asked Houston's counsel why they wanted "chief of police" rather than "policymaker," stating "That's not in the pattern [instructions]."  ROA.6848-50.  While a pattern charge will be "adequate for most fact situations," it is appropriate to disregard a pattern charge when it provides "an incorrect statement of the law as applied to the facts of [the] case."  *U.S. v. Allison*, 953 F.2d 870, 876-77 (5th Cir. 1992).  A pattern instruction may give "safe harbor" but only if it is "independently" confirmed to be a correct statement of the law.  *U.S. v. Peterson*, 977 F.3d 381, 390 n.2 (5th Cir. 2020) (citation omitted).

43

The Fifth Circuit pattern instruction on municipal liability presents a generic statement with a cautionary footnote that identification of the policymaker is a question of law:

---

**Fifth Circuit Pattern Jury Instruction § 10.5**

To prevail on [his/her] claim against the [city/ county], Plaintiff [name] must prove by a preponderance of the evidence that:

1.  an official policy or custom existed;
2.  a **policymaker** for the [city/county] knew or should have known about the policy or custom;[2]
3.  the **policymaker** was deliberately indifferent; and
4.  the policy or custom was the moving force leading to the constitutional violation.

[2] Policymaker status is a question of law. *See, e.g., Tharling v. City of Port Lavaca*, 329 F.3d 422, 427 (5th Cir. 2003)

(Emphasis added.)

---

An instruction under Section 10.5 is a correct statement only if the court complies with Footnote 2 and identifies the policymaker under state law. Because "policymaker" has a unique legal meaning under *Monell*, "failing to define the word would allow the jury, following the word's ordinary meaning," to find liability beyond what *Monell* permits. *U.S. v. Cessa*, 856 F.3d 370, 376 (5th Cir. 2017). "And when an instruction allows the jury to convict on innocent facts, the instruction is incorrect." *Id.* Here, the trial court's adherence to Section 10.5 without complying with Footnote 2 resulted in a fatal and incorrect statement of the law.

> **d)**    **The incorrect instruction seriously impaired Houston's defense.**

Houston's defense was that even if there were a constitutional violation it could not be attributed to Houston's policymaker.  Because the charge failed to identify Houston's policymaker, the jury was permitted to impose liability without finding that the policymaker caused the injury.  It invited the jury to find *respondeat superior* liability based on the actions of subordinate employees. This is reversible error.  "If the jury is not instructed as to who the final policymaker is, it cannot find that the decision of a final policymaker caused any constitutional deprivation." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947-48 (8th Cir. 2017).  This charge error warrants a new trial even without considering the other errors in the charge.

> **3.**    **Other errors in the charge affected the outcome in the case.**

> **a)**    **Instead of neutrally reciting Payne's allegations, the instructions portrayed Payne's policy theories as already proven.**

The Pattern Jury Charge on municipal liability requires a statement of the claimant's *allegations*. FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS § 10.5. Yet the instructions in this case effectively suggested that the trial court had already found (i) the policies were unconstitutional and (ii) they injured Payne, usurping the jury's role as fact-finder.  Jury Instruction No. 7 begins by stating that Payne sued the City "for its policy, practice, custom, failure to train and failure to supervise its

45

officers, all of which violated Mr. Payne Sr.'s Fourteenth Amendment substantive due process right to life and to be free from bodily harm." ROA.5575-76.   The instruction then characterized Houston's policies as deficient:

- "Houston's policy, practice, and custom does not require officers to follow posted speed limits when not responding to an emergency, but rather acquiesces to and permits officers to drive at reckless speeds of over 20 mph over posted speed limits both when responding to and when not responding to an emergency"

- "the City of Houston has failed to train its officers to follow posted speed limits when not responding to an emergency, and has failed to train its officers not to drive at reckless speeds of over 20 mph over posted speed limits both when responding to and when not responding to an emergency"

ROA.5575-76.

Houston objected.   ROA.6865-66 "[I]t's not framed as an allegation. It's as if the Court is instructing").   Houston's instruction was substantially correct, concisely summarizing Payne's allegations.   ROA.5744, ROA.2788 (JPO), ROA.28-29 (complaint).   The tilted instructions, in conjunction with other errors in the charge, affected the outcome of the case.   Houston timely moved for new trial. ROA.5923-24.

> **b)   The court refused to instruct the jury on applicable law from Texas Transportation Code.**

The jury charge must "clearly instruct[ ] jurors as to the *principles of law* applicable to the factual issues confronting them."   *Hamilton*, 46 F.4th at 397 (emphasis added).   Because both drivers' compliance with the Transportation

46

Code's rules of the road was at issue, these rules were critical to the jury's ability to weigh the evidence. The relevant rules pertain to left turns, speed limits, and the exceptions to speed limits for police officers. *See* TEX. TRANSP. CODE §§ 545.152, 545.351, 545.352, 545.365, 546.001.

Duplechain testified that Texas law exempts patrol officers from speed limits and that the police chief cannot alter state law. ROA.6636. Darcy later asserted that this was "the most concerning aspect" of Houston's evidence. ROA.7196. The existence of the *state* exemption directly undercuts Payne's contention that HPD's *local* policy was somehow defective because it did not identify speed limits. The Court's refusal to instruct the jury that state law exempts patrol officers from posted speed limits denied Houston a meaningful opportunity to respond to Payne's argument. TEX. TRANSP. CODE § 545.365; ROA.5748-49, ROA.6883-6886 (requesting an instruction on applicable Transportation Code provisions), ROA6886 (rejecting Houston's tender).

Similarly, Darcy testified that a party making a left turn must yield to oncoming traffic. ROA.7255-56. But the jury was not instructed that the driver making a left turn *shall* yield to a vehicle that is approaching from the opposite direction and is in the intersection or in such proximity to the intersection as to be an immediate hazard. *See* ROA.4748.

47

Houston's proposed jury instructions correctly summarized the relevant provisions and omitted only statutory numbering, cross-references, and subsections that were not pertinent. *Compare* ROA.5748-49 *with* TEX. TRANSP. CODE §§ 545.152, 545.351(a)-(c), 545.352(a), 545.365(a), 546.001, 546.004(c)(2).

The court's refusal of these instructions hindered Houston's ability to argue to the jury that (i) Houston and Cabrera did not violate due process and (ii) Payne Sr.'s illegal left turn – not Houston's policies – caused the collision.

> **c)    The court erred in submitting instructions and questions regarding theories of liability that were never pleaded or tried by consent.**

Payne originally pled that Houston had a persistent widespread practice of officers driving at double the speed limit when not responding to an emergency. ROA.31, ROA.47.  In the Joint Pretrial Order, Payne alleged claimed that policy "permits officers to drive at whatever speed they see fit including at well over double the speed limit no matter what the reason," including to drive to the station "to fill out a report."  ROA.2788.

The jury charge, however, stated that Houston's policy "***does not require*** officers to follow posted speed limits when not responding to an emergency, but acquiesces to and permits officers to drive at reckless speeds of over 20 mph over posted speed limits both when responding to and when not responding to an emergency." ROA.5775 (emphasis added).  This *Monell* theory—Houston's written

48

policy is defective merely because it lacks detail about speed limits—is not found in the complaint or the joint pretrial order. Moreover, it is a matter of ***state law*** that officers are exempted from posted speed limits, and Houston's *Monell* liability cannot be premised on state law. ROA.6860-62 (objecting to proposed charge because it is a matter of state law).

Likewise, the training theory in the jury charge does not reflect Payne's claims in the original complaint or joint pretrial order. The jury charge contains a new theory of failure to train on ***posted speed limits***, stating that Houston "failed to train its officers to follow posted speed limits when not responding to an emergency" and failed "to train officers not to drive at reckless speeds of over 20 mph over posted speed limits both when responding to and when not responding to an emergency." *See* ROA.6863-65 (objecting as unsupported by pleadings); ROA.5575-76 (final charge). In contrast, the original complaint alleges a generic failure to train "in proper safe driving techniques and safe driving speeds when not responding to active emergencies" and failure to train "to react quickly and with reckless disregard to the safety of others by driving without lights and sirens and driving at reckless speeds even when they are simply driving around." ROA.50-51. And although the Joint Pretrial Order alleges that the policy "permits" officers "to drive at whatever speed they see fit … including double the speed limit no matter the reason," it did not allege a failure to train to follow posted speed limits. ROA.2788.

49

The jury received no instruction at all on supervision.  *See* ROA.5778. Although the word "supervision" appears in the charge, the fleeting reference is vague and provides zero guidance. *Cf. Piotrowski*, 237 F.3d at 580 ("Piotrowski's specification of the policies she challenges has been vague").[14]

The upshot is that the specific theories submitted to the jury were not supported by the pleadings and should not have gone to the jury.  *Cf. Jackson v. Gautreaux*, 3 F.4th 182, 188–89 (5th Cir. 2021) (plaintiff engaged in an improper "switcheroo" by changing theories in response to MSJ); *see also Boyd*, 548 F.App'x 100 (vacating judgment against city where plaintiff failed to identify the policies or customs at issue with precision).

### d)    The charge used the wrong due process standard.

As discussed above in Section I.B., liability for a substantive due process violation requires egregious, brutal, or offensive actions that "shock the conscience" in a *constitutional sense*. *Lewis*, 523 U.S. at 850–54. *Estate of Parker*, 140 F.4th at 244–45.

The court refused Houston's "shock the conscience" and intent to harm language and instructed the jury that a substantive due process violation can occur merely if Officer Cabrera drove with deliberate indifference.  *See* ROA.6869-72

---

[14] The original complaint tied supervision to discipline, asserting that "officers are never pulled over or held accountable in any way for their unsafe driving habits." ROA31. The JPO referred to a lack of an auditing system to monitor officer driving speeds.  ROA.2788. Neither theory appears in the jury charge.

(objecting to deliberate indifference), ROA6852-54 (objecting during charge conference to incorrect definition of shocks the conscience). As outlined in Section I.B., *supra*, the standard is higher. The trial court erred. ROA.6853-54, ROA.6874 (rejecting defendant's tender over defendant's objection). Houston's proposed charge cited the correct standard. ROA.5745.

> **e)** **The charge used the wrong standard for defining "deliberate indifference" as applied to the final policymaker.**

The standard for proving deliberate indifference for the underlying constitutional violation is "different" from "the *Monell* showing" of deliberate indifference. *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 210 (5th Cir. 2011). The charge, however, defined "deliberate indifference" using the *subjective* standard applicable to the underlying constitutional violation. The standard for municipal liability is *objective* and "considers not only what the policymaker actually knew, but what he should have known." *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008). Houston objected to the charge for this reason. ROA.6875-76. Houston's proposed charge was substantially correct. ROA.5746, ROA.5777-78.

In addition, the instruction failed to include the requirement that ordinarily a finding of deliberate indifference requires a showing of multiple other similar constitutional violations. *See generally Verastique*, 106 F.4th at 432;

*Piotrowski,* 237 F.3d at 579.  Houston's proposed charge included this language. ROA.5746-47.

### f) The charge erroneously diluted the "moving force" causation requirement.

The charge diluted the standard for moving force to "acquiesces to and permits." ROA.5575.  *See* ROA.6862 (discussion of "acquiesces").  This is not the standard; allowing something is not the same as causing something.  *See Mansfield*, 30 F.4th at 279.  The charge essentially allowed the jury to find liability based on alleged acquiescence in officer speeding, which is a diluted ratification theory of liability that was neither pled nor proven.  ROA.6881-83.

### g) The charge submitted more than one theory of liability in a single question, which was changed from "and" to "or" during deliberations.

Houston's submitted a training instruction and omitted supervision because it was unsupported by the evidence.  ROA.5752.  At Payne's request and over Houston's objection, Payne's training and supervision theories were submitted in a single question with the conjunction "and."  ROA.5781, ROA.6899-90 (objecting to plaintiff's proposed jury question no. 2).  Subsequently, when the jury asked whether the claim failed if the jury did not find ***both*** training and supervision, the court changed the instruction to "or," over Houston's objection.  ROA.5764, ROA.7037-55.  Houston further argued that, if the instructions were to be changed

during deliberation, they should be split into two separate questions, one for training and one for supervision. ROA.7054-56.

Because each policy must be the moving force, the court's original single question and subsequent insertion of "or" was error. *See Piotrowski*, 237 F.3d at 581.

In sum, the jury charge as a whole does not correctly reflect the issues and law, and these errors affected the outcome of the case. This Court should reverse and remand.

### C. The court made erroneous evidentiary rulings that affected the jury's verdict.

The Court reviews the exclusion or admission of evidence for abuse of discretion. *Yarbrough v. SlashSupport Inc.*, 152 F.4th 658, 664 (5th Cir. 2025). The error must affect a "substantial right" of the party. Fed. R. Evid. 103.

#### 1. The court erred in admitting expert testimony over Houston's objection that was not disclosed during discovery.

The Court admitted over Houston's objection Plaintiffs' Exhibit 26, which is AVL data regarding other HPD officers. As discussed in Section I.B.2.b)(2), *supra*, the AVL data—which was never connected to the Chief—omitted critical context. ROA.7172-73, ROA.7180, ROA7182. Evidence of officers' speeds in unknown circumstances is irrelevant under *Monell* because it does not reflect any *similar* instances of which the police chief knew or should have known.

53

At trial, Payne sought to introduce the exhibit through Darcy.  Darcy was unable to identify it, and the court excused the jury.  ROA.7108-09.  Houston objected because neither of Darcy's written reports relied on Exhibit 26.  ROA.7175-80.  Payne's counsel admitted that Darcy had not previously done an analysis of this exhibit.  ROA.7179.  The court overruled the objection and admitted the exhibit.  ROA.7183.

Darcy then used the exhibit to opine that any speed that is 20 mph over the speed limit is "reckless" (even in an emergency) and that there is no reason for officers to ever reach 90 or 100 mph, which was never disclosed during discovery.  ROA.7206-07 (overruling Houston's objections that the opinion exceeded the designation), ROA.7212 (same), ROA.1557-1601.  The court erred in admitting Plaintiffs' Exhibit 26 and any testimony related to this exhibit through Darcy, which affected Houston's substantial rights.

**2.   The court erred in excluding significant evidence regarding periods of separation or estrangement between Payne Sr. and his family.**

Because Payne's family members have asserted their Section 1983 claim through Texas's wrongful-death statute, *see Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 208–09 (5th Cir. 2016), federal courts look to Texas law for guidance on the damages recoverable in a wrongful death action. *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 172 (5th Cir. 1985).

Under Texas law, evidence to support wrongful death damages should consist of evidence of a close family relationship. *See Moore v. Lillebo*, 722 S.W.2d 683, 686 (Tex. 1986). Juries may consider:

> (1) the relationship between husband and wife, or a parent and child; (2) the living arrangements of the parties; (3) any absence of the deceased from the beneficiary for extended periods; (4) the harmony of family relations; and (5) common interests and activities.

*Id.* at 688; *see also* TEX. PATTERN JURY CHARGE 29.3.

Houston repeatedly urged the court to allow the jury to hear evidence from the family regarding these topics. ROA.5534-35, ROA.6470-77, ROA.6673-74. The court excluded significant, directly relevant evidence:

- Harriet Payne's 2008 divorce petition alleged that she and Payne Sr. had not lived as husband and wife since July of 1987 and he abandoned his family. (ROA.6497-98 offer of proof Harriet Payne), ROA.3157-65 (divorce petition and related filings);

- Payne Sr. was incarcerated in Louisiana in 1990-1992 and 1980-1982 ROA.6497-98, ROA.6673-74;

- Robert Payne—purported child of Charles Payne outside the marital union—never lived in the same household, spent many years in jail himself, and could not testify at trial because he was incarcerated. ROA.6166-68;

55

- Cavin Payne was imprisoned for 24 years and was only able to see his father maybe twice per month.  ROA.6720-23.

At the bare minimum, this Court should award a new trial on damages.

**3.      The court erroneously excluded evidence that Payne Sr. was not wearing his seatbelt and that marijuana was in his system at the time of his death.**

Experts on both sides had already testified in deposition that marijuana can impair a party's ability to safely operate a motor vehicle.  ROA.1655-57 (Darcy); ROA.1130, ROA.2213, ROA.2223 (Dr. Totz).  Houston urged the court to allow the jury to hear this evidence, ROA.5534-37, because it is relevant whether Payne Sr. was impaired at the time of the accident.  *See also* ROA.5535-36, ROA.6496 ROA.6498-99.

The court also excluded evidence that Payne Sr. was not wearing his seatbelt (i.e., he was an unrestrained driver).  ROA.6157-62, ROA.5537, ROA.6157-62. Because Harriet Payne and others testified that Payne Sr. always wore his seat belt, this evidence provided circumstantial evidence of his impairment.  ROA.5537, ROA.6499-500.  The Court erred in excluding it.

**D.      The trial court's rulings unfairly and improperly subjected the City of Houston to trial by ambush.**

Houston was forced to defend vague, evolving theories that were never disclosed during discovery, in the complaint, or joint pretrial order.  The ultimate *Monell* theories were unpled and undisclosed during discovery; the expert opinions

were unpled and undisclosed in discovery; the basis for those expert opinions (i.e., the AVL data) was undisclosed in discovery; and Plaintiffs' calculations for damages ("stolen moments") were unpled and undisclosed during discovery. The degree of difference between pleaded theories and what actually went to the jury is so stark as to be manifestly unjust. All of this was done against a jury charge that did not identify the final policymaker and diluted the standards for every *Monell* element to such a degree as to make a liability finding all but certain. The Court should order a new trial.

### 1.  The Mighty Morphin *Monell*

As discussed in section II.B.3(c), *supra*, Payne's *Monell* theory morphed dramatically between the complaint and the jury charge. The *Monell* custom or policy that was ultimately submitted to the jury was a complete surprise. Indeed, the first time it ever appeared in print was the morning of the charge conference, when Payne submitted the proposed "joint" charge. ROA.5657.

Payne's response to Houston's motion for new trial tacitly acknowledged as much, downplaying the ambush with euphemisms. *See, e.g,* ROA.6043, ROA.6046, ROA.6046, ROA6052. But no amount of wordsmithing can circumvent the fact that Houston pointed out in its motion for new trial: Houston was forced to defend vague, evolving theories that were evidently developed on the fly, and never disclosed during discovery. ROA5932.

Nothing in the pleadings pegs recklessness to 20 mph for emergency driving. Nothing in the pleadings alleges that the General Orders requiring officers to drive in a safe and responsible manner and with due regard for the safety of citizens is unconstitutional because it lacks a requirement that officers follow the speed limit during non-emergency driving. Instead, the pleadings alleged a pattern of officers driving recklessly (defined as double the speed limit) when not responding to an emergency call. ROA.2788 (joint pretrial order).[15]

Payne evidently changed gears after the court reversed its pretrial ruling and permitted Cabrera to testify that he was responding to a priority two emergency call. ROA.2934 (plaintiff's motion), ROA.5566 (order granting), ROA.6590-91, ROA.6598:2-7, ROA.6597. Suddenly, Payne's *Monell* theory *du jour*—that officers drive recklessly when ***not responding to an emergency***—did not fit anymore. The next day, mid-trial, Payne launched the *Monell* theory that ultimately landed on the court's charge.

### 2.    Houston was ambushed by opinion testimony from Darcy.

As discussed in section II.C.1., this ambush theory was elicited through Darcy. Specifically, Payne used Darcy to discuss the AVL data, which Darcy did

---

[15] Summary judgment revealed out of 483 crashes occurring in the 7 months preceding this incident, in ***only three—less than one percent***—was the HPD officer found at fault with unsafe speed as a contributor. ROA.1404. Two of those three involved officers who were driving ***below the speed limit***. ROA.1404, ROA.1337 (30mph/35mph zone), ROA.1338 (50-55mph/60mph zone).

not consider for any of his reports. *See* ROA.3095-4093 (all three of Darcy's reports); ROA.7183. It was a complete surprise that Darcy would discuss this data or espouse the opinion that it is per se reckless to travel at speeds of 90 or 100 mph even during an emergency response. Houston argued surprise and ambush because about a week before trial Houston requested that Payne disclose any statistical analysis based upon a document that Houston had produced and Payne refused. ROA.7175-76, ROA.6126, ROA.7179-81.

Payne's counsel eventually admitted: "[Darcy] did not do an analysis of that specific document…" ROA.7179. Nevertheless, the trial court overruled Houston's objections to Payne's exhibit 26. ROA.7183.

In response to Houston's motion for new trial, Payne defended the admission of Darcy's new opinions relying on the AVL data, asserting that "expert witnesses are permitted to develop opinions based upon the evidence introduced at trial." ROA.6043. But the AVL data was produced during discovery and Payne argued that Houston could have discovered these opinions during his deposition, ROA.6053, suggesting these opinions were not based upon new evidence revealed during trial. Because Darcy was a retained testifying expert, Payne was required to disclose *all* his opinions *and* the basis therefore during discovery—irrespective of whether Houston deposed him. *See* FED. R. CIV. P. 26. Payne's failure to do so

59

precluded him from espousing these opinions at trial.  *See* FED. R. CIV. P.37(c)(1).
*See also* ROA.6922-23 (objecting to argument or instruction regarding AVL data).

### 3. Plaintiffs "stolen moments" damages theory was never disclosed until closing.

Finally, Payne failed to disclose her method of calculating damages during discovery.  Houston moved to exclude any evidence of damages because Payne failed to provide any computations or supporting documents during discovery, resulting in unfair prejudice to Houston.  ROA.5532-34, ROA.2940-41 (Defendant's motions in limine 5-6), ROA.6194-98 (discussion of motions in limine during pretrial conference).  The court denied Houston's motions.  ROA.5566.

Payne argued that computations are unnecessary for non-economic damages because they are not easily calculable.  ROA.6194.  But Texas law rejects such arguments.  *Gregory v. Chohan*, 670 S.W.3d 546, 549 (Tex. 2023) (plurality op.).

In *Gregory*, the Texas Supreme Court reversed a $15 million award for non-economic damages, explaining:

> Juries cannot simply pick a number and put it in the blank.
> To guard against arbitrary outcomes and to ensure that
> damages awards are genuinely compensatory, the plaintiff
> in a wrongful death case should be required to demonstrate
> a rational connection, grounded in the evidence, between
> the injuries suffered and the dollar amount awarded.

60

*Id.* at 551 (citation and quotation omitted). Payne failed to timely disclose this rational connection—or computation under Rule 26 parlance.

Subsequently, Payne argued damages based on "stolen moments." ROA.6698, ROA.6988. Had Payne disclosed during discovery that damages were based on "stolen moments," Houston could have elicited evidence from actuarial tables about Payne Sr.'s life expectancy, or additional testimony from Dr. Totz regarding his life expectancy given his severe coronary artery disease. This was ambush and manifestly unjust given the court's refusal to allow Houston to assert significant periods of separation between Payne Sr. and his wife and family. Houston's objection to this improper argument was overruled. ROA.6988.

### E.   The damages awarded were excessive.

Courts may find a damage award excessive on two grounds. *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 881 (5th Cir. 2016). First, a court can look to factually similar published cases. *Echeverry* 988 F.3d at 236; *Douglass v. Delta Air Lines, Inc.*, 897 F.2d 1336, 1344 (5th Cir. 1990). Here, there are none; as discussed in section I.B.1, *supra*, there has never been a published decision from the Fifth Circuit recognizing a 1983 claim stemming from a car accident.

The second ground is that the award "shocks the judicial conscience." *Montano*, 842 F.3d at 881. This standard is met here, where, as discussed in section II.C.2., *supra*, the jury was not allowed to hear evidence regarding the 21-year period

in which Payne Sr. was alleged to have abandoned his family, as well as the various family members' separation due to incarceration. *See e.g.,* ROA.6497-98, ROA.3157-65, ROA.6720-23. There is simply no way the jury would have awarded these figures had they heard the truth behind the individuals' relationships with Payne Sr.

## CONCLUSION

Appellant City of Houston prays that the Court will reverse and render judgment in favor of the City and grant all such other and further relief to which it may be entitled, including costs of appeal; or, in the alternative, that the Court reverse and order a new trial on liability and damages.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

**CHRISTY L. MARTIN**
**Chief Torts/Civil Rights**

Date: June 25, 2026            By:  */s/ Christy L. Martin*
ATTORNEY IN CHARGE
SBN: 24041336
FBN: 754168
832.393.6438
christy.martin@houstontx.gov
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
832.393.6259 Facsimile

***Attorneys for Defendants***
***City of Houston, Texas***

63

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded electronically through the electronic filing manager on June 25, 2026, to the all known counsel of record:

*/s/ Christy L. Martin*
CHRISTY L. MARTIN

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) this document contains 12,957 words.

.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 MSO 64-bit in Times New Roman 14 point.

*/s/ Christy L. Martin*
CHRISTY L. MARTIN