**No. 26-20052**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**HARRIET PAYNE; CHARLES PAYNE, JR.; CAVIN PAYNE; STEPHANIE PAYNE; BETTY MORRISON; KIZZ GOINS; KATANIA DEARBORNE; ROBERT PAYNE,**

Plaintiffs - Appellees

v.

**CITY OF HOUSTON, TEXAS,**

Defendant - Appellant

---

**On Appeal from**
United States District Court for the Southern District of Texas

4:23-CV-4686

---

# REPLY BRIEF OF APPELLANT, CITY OF HOUSTON, TEXAS

---

ARTURO G. MICHEL
City Attorney

Christy L. Martin
Chief, Torts/Civil Rights
Texas Bar No. 24041336
Federal Bar No. 754168
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street, 4th Floor
Houston, Texas 77002
832.393.6438 (telephone)
832.393.6259 (facsimile)
christy.martin@houstontx.gov

*Attorneys for City of Houston, Texas*

# TABLE OF CONTENTS

Table of Contents ..................................................................................... ii
Index of Authorities ..................................................................................... iv
Argument and Authorities in Reply .....................................................................1
I. The *Monell* Morphed again.................................................................1
A. Payne has abandoned the *Monell* theory described in the charge. ............1
B. Payne's new *Monell* theory fares no better.............................................3
C. Payne's new *Monell* theory fails to meet the rigorous standard for moving force causation. .........................................................................................4
1. The alleged policy is not unconstitutional merely because it affords officers discretion..............................................................................6
2. Payne's new *Monell* theory is premised improperly upon *allowing* officer conduct, which is insufficient for "moving force."...........................7
3. Payne presented no evidence that Officer Cabrera was aware of the unconstitutional policy or custom..................................................8
4. Payne Sr. had a fatal heart attack that Payne could not attribute to the collision itself...........................................................................8
II. The evidence falls short of establishing conscience-shocking conduct. .......9
A. Payne's cases are distinguishable. ........................................................10
B. There is no evidence that Cabrera was aware of impending harm and consciously refused to prevent it. ..................................................12
III. A bedrock requirement of *Monell* liability is conduct attributable to the final policymaker. The verdict here cannot stand because the jury did not affirmatively find that Houston's final policymaker caused the injury and because the evidence does not otherwise prove actual or constructive knowledge by the final policymaker. ...........................................................................14
A. Refusal to identify the final policymaker in the charge was harmful error...........................................................................................14
B. Houston's requested language was not substantially covered by the charge as a whole, and the erroneous instruction affected the outcome of the case...16
C. The evidence is insufficient to establish that the City's final policymaker knew about or had constructive knowledge of an unconstitutional policy or custom. ..............................................................................................21

IV. Payne adduced no evidence to meet the threshold for deliberate indifference. ....22

A. Payne improperly asserts a warped ratification theory that was neither pled nor proven. ....23

B. Payne improperly seeks to extend the single-incident exception beyond the failure-to-train context. ....24

Conclusion ....27

Certificate of Service ....28

Certificate of Compliance ....29

# INDEX OF AUTHORITIES

## Cases

*Advanced Technologies LLC v. City of Jackson*,
817 F.3d 163 (5th Cir. 2016) ....................21

*Baron v. Suffolk County Sheriff's Dept.*,
402 F.3d 225 (1st Cir. 2005)....................16

*Browder v. City of Albuquerque*,
787 F.3d 1076 (10th Cir. 2015) ....................11

*Burge v. St. Tammany Par.*,
336 F.3d 363 (5th Cir. 2003) ....................25

*Carnaby v. City of Houston*,
636 F.3d 183 (5th Cir. 2011) ....................26

*Comm'rs of Bryan Cnty v. Brown*,
520 U.S. 397 (1997)....................24

*Connick v. Thompson*,
563 U.S. 51 (2011)....................24

*Coon v. Ledbetter*,
780 F.2d 1158 (5th Cir. 1986) ....................23

*County of Riverside v. McLaughlin*,
500 U.S. 44 (1991)....................10

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998).................... 9, 10, 12, 13

*Daniels v. City of Dallas,*
272 F.App'x 321 (5th Cir., March 28, 2008)....................12

*Davidson v. City of Stafford*,
848 F.3d 384 (5th Cir. 2017) ....................26

*Dean v. McKinney*,
976 F.3d 407 (4th Cir. 2020) ........................................................................11

*DeShay v. Bastrop Indep. Sch. Dist.*,
180 F.3d 262 (5th Cir. 1999) ........................................................................23

*Doe ex rel. Magee v. Covington Cty. Sch. Dist.*,
675 F.3d 849 (5th Cir. 2012) ...................................................................... 9, 14

*Edwards v. City of Balch Springs, Tex.*,
70 F.4th 302 (5th Cir. 2023) ...................................................................... 6, 25

*Elvis Presley Enterprises, Inc. v. Capece*,
141 F.3d 188 (5th Cir. 1998) ..........................................................................5

*Fisher v. Moore*,
73 F.4th 367 (5th Cir. 2023) ........................................................................11

*Flores v. Cameron County,*
92 F.3d 258 (5th Cir. 1996) ..........................................................................15

*Flores v. City of S. Bend*,
997 F.3d 725 (7th Cir. 2021) ................................................................ 11, 14, 17

*Grandstaff v. City of Borger*,
767 F.2d 161 (5th Cir.1985) ..........................................................................23

*Groden v. City of Dallas*,
826 F.3d 280 (5th Cir. 2016) ........................................................................21

*Gros v. City of Grand Prairie*,
181 F.3d 613 (5th Cir. 1999) ........................................................................16

*Hill v. Shobe*,
93 F.3d 418 (7th Cir. 1996) ..........................................................................12

*Jackson v. Gautreaux*,
3 F.4th 182 (5th Cir. 2021) ............................................................................5

*James v. Harris Cnty*.,
577 F.3d 612 (5th Cir. 2009) ....................8

*Jett v. Dallas Indep. Sch. Dist.*,
491 U.S. 701 (1989).................... passim

*Kitchen v. Dallas Cnty., Tex.*,
759 F.3d 468 (5th Cir. 2014) ....................24

*Lisby v. Henderson*,
74 F.4th 470 (7th Cir. 2023) ....................12

*Mansfield v. Williamson County*,
30 F.4th Cir. 276 (5th Cir. 2022) ....................7

*Monell v. New York City Dep't of Social Svs.,*
436 U.S. 658 (1978).................... passim

*Montano v. Orange Cnty., Tex.*,
842 F.3d 865 (5th Cir. 2016) ....................25

*Moore v. LaSalle Mgmt. Co.*,
41 F.4th 493 (5th Cir. 2022) .................... 23, 24

*Peterson v. City of Fort Worth, Tex*.,
588 F.3d 838 (5th Cir. 2009) ....................26

*Pineda v. City of Houston*,
291 F.3d 325 (5th Cir. 2002) ....................26

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001) .................... 3, 15

*Portis v. First Nat. Bank of New Albany, Miss*.,
34 F.3d 325 (5th Cir. 1994) ....................6

*Russell v. Plano Bank & Trust.*,
130 F.3d 715 (5th Cir. 1997) ....................16

*Sauers v. Borough of Nesquehoning*,
905 F.3d 711 (3d Cir. 2018)......................................................................11

*Scheurer v. Rhodes,*
416 U.S. 232 (1974)........................................................................................7

*Schroeder v. City of Fort Thomas*,
412 F.3d 724 (6th Cir. 2005)..........................................................................7

*Slade v. City of Marshall, Tex.*,
814 F.3d 263 (5th Cir. 2016) ..........................................................................8

*Sterling v. City of Jackson*,
2026 WL 2617771 (5th Cir., Sept. 4, 2026) (*en banc*).....................................13

*Thompson & Wallace of Memphis v. Falconwood Corporation,*
100 F.3d 429 (5th Cir. 1996) ........................................................................17

*U.S. v. Green*,
272 F.3d 748 (5th Cir. 2001) ........................................................................21

*U.S. v. James*,
177 F.4th 642, 651 (5th Cir. 2026) ...............................................................20

*U.S. v. Rodrigo*,
934 F.2d 595 (5th Cir. 1991) ........................................................................20

*U.S. v. Rubio*,
834 F.2d 442 (5th Cir. 1987) ........................................................................19

*Valle v. City of Houston*,
613 F.3d 536 (5th Cir. 2010) ................................................................ 15, 16

*Verastique v. City of Dallas*,
106 F.4th 427 (5th Cir. 2024) ..........................................................................6

*Webb v. Sloan*,
330 F.3d 1158 (9th Cir. 2003) ......................................................................16

**Statutes**

42 U.S.C. § 1983 ........................................................................................24

TEX. TRANSP. CODE § 545.351..........................................................................3, 4

TEX. TRANSP. CODE § 545.352..........................................................................4

TEX. TRANSP. CODE § 545.365..........................................................................3

TEX. TRANSP. CODE § 546.001..........................................................................4

**Rules**

Fed. R. Civ. P. 51 ........................................................................................15

Fed. R. Civ. P. 16 ........................................................................................6

## ARGUMENT AND AUTHORITIES IN REPLY

Houston's opening brief raised issues it addressed in its motion for judgment as a matter of law, which require reversal and rendition. Houston's opening brief raised alternative arguments addressed in its motion for new trial, which would require reversal and remand.

This reply will largely focus on the arguments that would result in rendition. And in fact, Payne's Appellees' brief has largely mooted some of the issues raised in Houston's motion for new trial because she has tacitly admitted that the verdict was unsupported by the evidence. Specifically, Payne's brief abandons the *Monell* theory that was included on the charge. Instead of defending that theory, Payne's brief asserts another new and unpled *Monell* theory. But even if Payne's latest *Monell* theory were properly before the Court, it fails.

### I. The *Monell* Morphed again

Payne's *Monell* theory morphed once again in Appellees' brief. *See* Appellant's br. at 57-58.

#### A. Payne has abandoned the *Monell* theory described in the charge.

As described in the jury charge, Payne's *Monell* claim advanced a theory of liability premised on violations of *local traffic laws*:

> [T]he City of Houston's policy, practice, and custom does not require officers to follow posted speed limits when not responding to an emergency, but rather acquiesces to and permits officers to drive at reckless speeds of over 20 mph

> over posted speed limits both when responding to and when not responding to an emergency.

ROA.5755. This theory claimed substantive due process violations in two situational contexts: (a) one for non-emergency driving based on non-compliance with the posted speed limit; and (b) one for emergency driving based on exceeding the posted speed limit by 20 mph. Houston's opening brief explained that, by tying her claim to speed limits, Payne's argument strips substantive due process of its constitutional dimension.[1] Appellant's br. at 26. Payne tacitly concedes as much and Payne's brief makes no effort to defend this formulation of her *Monell* theory.

Instead, Payne now argues that the moving force behind Mr. Payne's death is an alleged "policy of allowing police officers to drive at any speed they deem safe" based on the totality of the circumstances. *See* Appellees' br. at 10-11. This new formulation contends that the policy is constitutionally infirm because it leaves discretion to decide a reasonably prudent speed based upon the circumstances then existing. In presenting this argument, Payne has essentially ***abandoned*** the alleged policy that was the basis of the jury verdict. For this reason alone, reversal is required. No policy could possibly be the moving force for Mr. Payne's death if Payne cannot consistently identify or even articulate what it is. *See generally*

[1] Additionally, because the allegedly unconstitutional policy is predicated upon *both* the speed limit and the presence or absence of an emergency, the AVL data is insufficient to support the verdict because it does not reflect either one. *See* Appellant's br. at 29-30.

*Piotrowski v. City of Houston*, 237 F.3d 567, 580-581 (5th Cir. 2001) (criticizing plaintiff's "vague" specification of the challenged policies and explaining that the policies or customs must be disaggregated and distinctly articulated).

**B. Payne's new *Monell* theory fares no better.**

This newly-morphed *Monell* presents a question of state law, rather than department policy, even more so than before. As such, it is at odds with *Monell* and contrary to Supreme Court authority that rejects treating due process claims as simply another type of tort claim. *See* text, *infra*, at 17-18. Indeed, in their separate pending appeal related to Payne's Texas tort claims, Payne argues:

> Every driver in Texas "is under a duty to drive no faster than a person of ordinary prudence under the same or similar circumstances"…This well-established common law duty is also codified in Section 545.351 of the Texas Transportation Code, which provides that an operator "(1) may not drive a vehicle at a speed greater than is reasonable and prudent ***under the conditions*** and having regard for actual and potential hazards ***then existing***"… ***These duties applied equally to Officer Cabrera as they do to other drivers…***

*See* Appellees' br. at 18, Cause No. 25-20492 (emphasis added). In other words, under Texas law, ***all*** drivers have a duty to operate at a reasonable speed, based upon the totality of the circumstances then existing. Add Transportation Code section 545.365 into the equation—which expressly exempts patrol officers from speed

limits[2]—and Payne's newest *Monell* formulation merely reflects Texas law generally and common notions of responsible driving.[3] *See* TEX. TRANSP. CODE §§ 545.351, 545.352, 545.365, 546.001.

Captain Duplechain's trial testimony confirms as much. He clarified that the discussion in his deposition about the totality of the circumstances arose in the context of a discussion about the applicability of Subchapter H of Chapter 545 of the Texas Transportation Code and how that particular provision applied in this context. ROA.6618.

This case is not and has never been about an unconstitutional police department policy but about ordinary state tort law. This is why Payne has failed to articulate and stick to a single formulation of her *Monell* theory.

### C. Payne's new *Monell* theory fails to meet the rigorous standard for moving force causation.

Payne first invented her "totality of the circumstances" policy theory in her summary judgment response. ROA.1811. Houston argued that it was not properly before the court because it was unpled, citing *Jackson v. Gautreaux*, 3 F.4th

[2] Payne argues "a policy that expressly excuses officers from any obligation to observe posted speed limits in non-emergencies makes constitutional violations not merely foreseeable but, as this case shows, inevitable." Appellees' br. at 33. If this argument had any merit at all, the Texas Transportation Code's express exemption from speed limits for all patrol officers would have triggered an ongoing plethora of supposed constitutional violations across the state. It hasn't.

[3] It also reflects generally accepted national standards for prudent driving with respect to speed. The National Safety Council—which published the driving training curriculum Officer Cabrera took—similarly advocates that drivers make "responsible and respectful choices" regarding speed by adjusting speed based on conditions. ROA.7249, ROA.7726.

182, 188–89 (5th Cir. 2021). ROA.2744. Nor was it advanced in the joint pretrial order. ROA.2788. Instead, Payne pled:

> This policy permits officers to drive at whatever speed they see fit including at well over double the speed limit no matter the reason for their driving including driving back to a station to fill out a report or just on patrol and even when no emergency is needing to be responded to.

ROA.2788. This *Monell* formulation from the pretrial order is contrary to the record evidence, which includes the actual written policies that require officers to operate vehicles in a safe and responsible manner using due regard for the safety of all persons. ROA.7383, ROA.7400-01, ROA.7408, ROA.7409, ROA.7410. Nor was there any testimonial evidence to the effect that officers can throw caution to the wind and travel at whatever speed they want, regardless of circumstances. The *Monell* theory in Payne's appellate brief appears to be a post-hoc attempt to avoid reversal and rendition by marrying what Payne ***"sorta"*** pleaded with ***some*** evidence admitted at trial for other reasons.

As was true at the summary judgment stage, Payne forfeited this claim by failing to plead it with specificity in her live complaint or the joint pretrial order, or by demonstrating on appeal that the issue was tried by consent. *See e.g., Jackson*, 3 F.4th at 188 (recognizing that claim which is not raised in the complaint is not properly before the court); *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998) ("Once the pretrial order is entered, it controls the course and

scope of the proceedings under Federal Rule of Civil Procedure 16(e), and if a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint."); *Portis v. First Nat. Bank of New Albany, Miss*., 34 F.3d 325, 332 (5th Cir. 1994) (recognizing that parties have duty to clearly articulate all factual and legal bases for trial and that claims are not tried by consent if evidence is relevant to both pled and unpled issues).[4] And as was true at summary judgment, ROA.2745, this new *Monell* theory also fails to meet the demanding moving force standard:

**1. The alleged policy is not unconstitutional merely because it affords officers discretion.**

First, as Houston demonstrated in its opening brief, a policy is not unconstitutional merely it affords officers discretion. *See* Appellant's br. at 22-23 (citing *Edwards v. City of Balch Springs, Tex*., 70 F.4th 302, 309 (5th Cir. 2023) and *Verastique v. City of Dallas*, 106 F.4th 427, 435 (5th Cir. 2024)). Even if HPD's policy were as Payne describes—i.e., that officers are allowed to determine their own speed based upon the totality of the circumstances—the policy does not *compel* driving at reckless speeds or *prohibit* officers from exercising their discretion in a constitutionally valid manner.

---

[4] "***This*** is the policy and custom that is in the jury charge. ***This*** is the policy that we allege was the policy of the City of Houston, that the City of Houston police department's policy, practice, and custom does not require officers to follow posted speed limits when not responding to an emergency, but rather the City acquiesces to and permits officers to drive at those reckless speeds, sometimes over 20 miles an hour and over the posted speed limits both when responding to an emergency and not responding to an emergency." ROA.6980-81 (emphasis added).

Payne's brief does not address this problem.

Nor did Payne counter Houston's discussion of *Schroeder v. City of Fort Thomas*, 412 F.3d 724, 729 (6th Cir. 2005), which recognized, "[i]t is in the very nature of deliberative bodies to choose between and among competing policy options, and yet a substantive due process violation does not arise whenever the government's choice prompts a known risk to come to pass" (citing *Scheurer v. Rhodes,* 416 U.S. 232, 241 (1974)). This is especially true with policies on driving. "[B]ecause the accepted premise of all speed-limit debates is that lower speed limits will lead to fewer accidents and fewer traffic fatalities," one could argue "that *all* governing bodies act with deliberate indifference" when they adopt one proposal over another. *Id.* at 729 (emphasis in original).

**2. Payne's new *Monell* theory is premised improperly upon *allowing* officer conduct, which is insufficient for "moving force."**

Merely allowing conduct is not the standard for moving force. *See* Appellant's br. at 35-36 (citing *Mansfield v. Williamson County*, 30 F.4th Cir. 276, 279 (5th Cir. 2022)). Yet throughout Payne's brief, Payne uses words like "allow" and "permit." However, even assuming HPD's policy "permitted" Cabrera's conduct, such evidence, as a matter of law, cannot establish moving force causation, which requires "a direct causal link" and not merely "but for" causation. *See* Appellees' br. at 35-36.

### 3. Payne presented no evidence that Officer Cabrera was aware of the unconstitutional policy or custom.

To establish that the custom or policy was the moving force, Payne had to adduce evidence that Cabrera was aware of the policy. *See* Appellees' br. at 10 (citing *James v. Harris Cnty*., 577 F.3d 612, 618 (5th Cir. 2009)). Payne elicited no testimony to prove Officer Cabrera ***was aware*** of a policy "allowing officers to drive at any speed they deem safe" based on the totality of the circumstances. Rather, Cabrera testified to his understanding that he was required to obey all speed limits. ROA.6583:18-25, ROA.6584, ROA.6585. Cabrera also testified that he was not aware of any widespread custom of officers driving at excessive speeds when not responding to an emergency call. ROA.6591:21-24. Nor did he perceive that he was authorized to drive a city vehicle recklessly. ROA.6590. *James*, 577 F.3d at 618.

Payne's brief is wholly silent on this dispositive issue.

### 4. Payne Sr. had a fatal heart attack that Payne could not attribute to the collision itself.

As Houston's opening brief demonstrated, Payne had to prove that Houston's policy more likely than not caused the Mr. Payne's death. *See* Appellant's br. at 38 (citing *Slade v. City of Marshall, Tex*., 814 F.3d 263, 264 (5th Cir. 2016)). Payne did not meet that threshold here; overwhelming evidence shows that Payne Sr. suffered a fatal "widow-maker" heart attack before or at the time of

the collision. ROA.6803, ROA.6825-26, ROA.6804, ROA.6807-10, ROA.7126, ROA.6808.

Payne responds that this argument asks the court to reweigh conflicting evidence and credit testimony the jury rejected. *See* Appellees' br. at 30. Not so. Payne presented no evidence refuting that Payne Sr. actually suffered a heart attack. Dr. Ross ultimately admitted she could not refute that Payne Sr. was having a heart attack. ROA.7140. In other words, there was no conflicting evidence of Payne Sr.'s fatal "widow-maker" heart attack.

Even if Payne Sr.'s heart attack started after the collision, Payne presented no evidence that it was caused by the collision. ROA.6807-10. Individuals rarely survive this kind of heart attack in the field. ROA.6810. In short, because Payne failed to negate that Payne Sr.'s death was already imminent as a result of a "widow-maker" heart attack unrelated to the collision itself, Payne cannot prevail on a wrongful death claim.

## II. The evidence falls short of establishing conscience-shocking conduct.

Under *Lewis*, the "shock the conscience" is essential to "preserv[e] the constitutional proportions of substantive due process." *Lewis*, 523 U.S. at 850. The standard requires "stunning evidence" far "beyond mere violations of state law." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 867-68 (5th Cir. 2012) (*en banc*) (citations omitted). Here, Payne's "deliberate indifference" analysis

replicates traditional tort law, relies on factually distinguishable out-of-circuit cases, and urges a standard that ultimately would constitutionalize traffic accidents involving public servants.

### A. Payne's cases are distinguishable.

The evidence shows that, after the DWI suspect was jailed, Cabrera was still attached to a priority-two emergency call and was under pressure to complete his charging report for the District Attorney. Payne dismisses these police responsibilities as mere "clerical obligations," Appellees' br. at 27, grossly mischaracterizing the charging process that occurs after a person is jailed. As recognized in *Lewis*, the state has unique obligations to individuals held "against [their] will." *Lewis*, 523 U.S. at 851 (citation omitted). These obligations include prompt charging decisions.[5] Payne's dismissive mischaracterization defies *Lewis's* directive that courts analyze the "exact" circumstances "before any abuse of power is condemned as conscience shocking." *Lewis*, 523 U.S. at 850. *Lewis*, 523 U.S. at 850. Here, the exact circumstance is that Cabrera was traveling to the station to prepare the offense report and criminal charges essential to the DWI suspect's due process. ROA.6554-55, ROA.6556. He was not, as Payne argues, driving fast "for no better reason than wanting to go fast." Appellees' br. 3.

---

[5] *See generally County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (detainees must receive a prompt, judicial determination of probable cause, and delays exceeding 48 hours are presumptively unconstitutional).

Payne's out-of-circuit cases are distinguishable. In *Browder v. City of Albuquerque*, 787 F.3d 1076, 1077, 1082 (10th Cir. 2015), the court denied qualified immunity at the pleading stage where the complaint alleged that the officer had ended his shift, turned on his emergency lights, sped through the streets, and ran a red light, "*all for his personal pleasure, on no governmental business of any kind.*" *Id.* (emphasis added). In *Flores v. City of S. Bend*, 997 F.3d 725, 728-729 (7th Cir. 2021), the officer "roared" through a *residential* neighborhood, nearly 70 miles over the speed limit, on his way to a "routine" traffic stop being handled by five other officers *who had not requested assistance*, and ran a red light, killing a woman who had the right of way. In *Dean v. McKinney*, 976 F.3d 407, 415 (4th Cir. 2020), although an emergency dispatch was cancelled seconds after it was issued and the officer was told to "cut back to normal run," he continued to exceed the speed limit by nearly 40 mph. And in *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018), after notifying a neighboring jurisdiction that a traffic violator was headed their way, the officer decided to turn around and pursue the violator at speeds over 100 miles-per-hour on a curved two-way, undivided road, killing a bystander. *Sauers* also was decided on a "state-created danger" theory – a theory not recognized in the Fifth Circuit.[6]

[6] *See Fisher v. Moore*, 73 F.4th 367, 372 (5th Cir. 2023).

In contrast to the above cases, Cabrera was on duty as the primary unit assigned to a priority two call, was on his way to perform important charging responsibilities, was not driving in a residential area or a curved two-lane road, did not exceed the speed limit by 70 mph, and did not run red lights.

### B. There is no evidence that Cabrera was aware of impending harm and consciously refused to prevent it.

In *Daniels v. City of Dallas*, the panel rejected a shocks-the-conscience claim in a non-emergency speeding case, finding that deliberate indifference requires a showing of subjective awareness of impending harm and a conscious "refusal to prevent it." 272 F.App'x 321, *323 (5th Cir., March 28, 2008) (unpublished) (quoting *Hill v. Shobe*, 93 F.3d 418 (7th Cir. 1996)). Payne criticizes *Daniels* for citing *Hill*, a "pre-*Lewis*" case, and claims that it is undermined by subsequent authority from the Seventh Circuit. Appellees' br. at 26-27. In fact, recent Seventh Circuit authority confirms the vitality of *Hill* and its compatibility with *Lewis,* reiterating that the officer must have "actual knowledge of impending harm which he consciously refused to prevent." *Lisby v. Henderson*, 74 F.4th 470, 473–74 (7th Cir. 2023) (citations omitted). In *Lisby*, an officer killed a pregnant pedestrian while driving to work in his police vehicle. The officer exceeded the speed limit by 33 mph, illegally changed lanes, and partially crossed a fog line, striking the pedestrian without seeing her. The officer's "mere knowledge that driving at high speed at night could have fatal consequences is not enough to allege

a constitutional violation." *Id.* at 473. The allegation of "driving too fast for the road conditions" was grounded in negligence. *Id.*, citing *Hill*, 93 F.3d at 421. As in *Daniels* and *Lisby*, the claim that Cabrera drove too fast for the road conditions is grounded in negligence and is insufficient as a matter of law to support liability.[7]

Acceptance of Payne's argument would require this Court to categorically expand substantive due process into territory that neither this Court nor the Supreme Court has recognized as constitutional territory. Citing *Lewis*, this Court once again recently cautioned against the expansion of due process in *Sterling v. City of Jackson*, 2026 WL 2617771 (5th Cir., Sept. 4, 2026) (*en banc*), which rejected a claim despite allegations that a city *knowingly* supplied contaminated drinking water and induced people to drink it by *falsely* claiming the water was safe. Despite the Court's sympathies, the "deprivations, while grievous, do not infringe upon any deeply rooted constitutional right." *Id.* at *4-5 (explaining that judicial expansion of substantive due process "place[s] the matter outside the arena of public debate and legislative action") (citations and quotations omitted).

Without an underlying constitutional violation, an essential element of *Monell* liability is missing as a matter of law, warranting reversal and rendition. *See*

---

[7] And in any event, Payne elicited no evidence to suggest that Cabrera was traveling too fast ***for the conditions***. Darcy's opinions were pegged to the posted speed limit and were divorced from the conditions that Cabrera faced that day. ROA.7239-41.

Appellant's br. at 13 (citing *Doe v. Covington County Sch. Bd.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc)).

## III. A bedrock requirement of *Monell* liability is conduct attributable to the final policymaker. The verdict here cannot stand because the jury did not affirmatively find that Houston's final policymaker caused the injury and because the evidence does not otherwise prove actual or constructive knowledge by the final policymaker.

The identity of the "final policymaker" is not simply a defensive theory, it is an essential element of the plaintiff's case. Yet this essential element was completely omitted from the charge. The judge's authoritative instruction—that liability turns on the decisions of "*a policymaker*"—invited the jury to find liability based on the actions of the final policymaker *or* officials who were *not* policymakers. This is exactly the sort of defect that sunk the jury instructions in both *Jett* and *Flores*.

### A. Refusal to identify the final policymaker in the charge was harmful error.

The Supreme Court has made it clear that the trial court must identify the final policymaker under state law "*before* the case is submitted to the jury." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (emphasis in original). This means that "the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action" at issue. *Id*. After the trial court identifies these officials, the jury decides whether the officials' decisions "caused the deprivation of rights at issue." *Id.* In

*Jett*, the instructions constituted "manifest error" because they allowed liability based on the acts of the final policymaker *or* the acts of administrators who were not final policymakers. *Id.* at 736. Payne's brief does not discuss or cite *Jett*.

Following *Jett*, this Court in *Flores v. Cameron County* rejected instructions that permitted liability based on the actions of "the [final policymaker] or [a non-policymaker] or both." 92 F.3d 258, 270 (5th Cir. 1996). Remand was necessary because it was impossible to know upon which acts the jury based its finding of liability. *See id.* ("we cannot conclude that the challenged instruction could not have affected the outcome of the case").

In light of these bedrock principles established by the Supreme Court, municipalities must "insist[]" on proper identification of the city's responsible policymaker. *Piotrowski*, 237 F.3d 567, 578-79 & n. 19 (stating this is not an "opaque" requirement but a core requirement based on *Jett*, *Praprotnik*, and *Pembaur*). Houston's proposed instruction correctly identified the "chief of police" as the final policymaker, and it objected to the court's refusal to clarify its generic instruction. ROA.5700, 5737, 5744; ROA.6848-51. Citing *Valle v. City of Houston*, 613 F.3d 536, 543 (5th Cir. 2010), Houston explained that the police chief is the final policymaker by city ordinance. ROA.6848-51. Houston's objection satisfies Rule 51's requirement that a party's objection be "sufficiently specific to bring into focus the precise nature of the alleged error" or to "apprise the district court of his

particular problem with the challenged instruction." *Russell v. Plano Bank & Trust.*, 130 F.3d 715, 719-20 (5th Cir. 1997) (citations omitted). This case is a far cry from *Russell*, on which Payne relies, in which the plaintiff complained on appeal about the omission of certain words from the charge but had failed to reference the omitted language during the charge conference. *Russell*, 130 F.3d at 719.

While eschewing discussion of *Jett*, Payne further contends that the rule requiring judicial identification of the final policymaker does not apply in "custom" cases. Appellees' br. 44, n.2. But the rule in *Jett,* which is based on *Monell*, does not distinguish between suits based on custom and those based on policy. *See Jett*, 491 U.S. at 737; *see also Gros v. City of Grand Prairie*, 181 F.3d 613, 616 (5th Cir. 1999) (it was "incumbent" upon the trial court to consider state law "as well as evidence of the City's customs and usages" in determining which city officials were final policymakers). Payne cites *Webb v. Sloan*, 330 F.3d 1158 (9th Cir. 2003), which does not discuss *Jett,* and *Baron v. Suffolk County Sheriff's Dept.*, 402 F.3d 225 (1st Cir. 2005), a plain error case in which the defendant failed to assert any policymaker argument until after trial.

### B. Houston's requested language was not substantially covered by the charge as a whole, and the erroneous instruction affected the outcome of the case.

No language in the court's charge conveys that the relevant policymaker must have "final authority" to establish municipal policy. *Valle*, 613

F.3d at 542. The charge as a whole says nothing about what "a policymaker" is or does. The charge empowered the jurors to supply their own layperson definition and impose liability based on the acts of any person they viewed as a "policymaker." The charge allowed the jury to impose liability ***without finding that the final policymaker actually caused the injury.*** As in *Flores* and *Jett*, it is impossible to know the basis of the jury's finding of liability.

The case of *Thompson & Wallace of Memphis v. Falconwood Corporation* is instructive and analogous. 100 F.3d 429 (5th Cir. 1996). *Falconwood*, like this case, involved a claim about whether a defendant could be held responsible for an agent's conduct. This Court held that the trial court erred in failing to give a detailed instruction on agency law, finding that the agency issue "was complicated" and involved "complex legal theories that a layman might not understand." *Id.* at 434. Here, the distinction between "a *final* policymaker" and a mere "policymaker" is equally if not more complex.

The complexity of the question and the likelihood of juror confusion is demonstrated by the following colloquy when the trial court erroneously suggested that ***Captain Duplechain's testimony*** was sufficient to send the case to the jury.[8] In

[8] Duplechain, who holds a law degree, testified about his role in policy drafting and how he received input from the chief and the "chain of command." ROA.6607, 6635.

response to Houston's argument that the plaintiffs "don't have evidence of policymaking," the court responded:

> THE COURT: Yeah, but you've got [Captain] Duplechain stating that he was the head of that division and how it goes as to what the procedure is within the department.
>
> MS. MARTIN: And that's not according to City ordinance. He can't be the policymaker.

ROA.7330:18-22, ROA.7331:3-11. The court sent the case to the jury with zero guidance on this element. Subsequently, although it was Payne's burden to prove that the final policymaker's decisions caused a constitutional deprivation (*Jett*, 491 U.S. at 737), Payne's closing argument assiduously avoided any reference to a "policymaker."[9] *See* ROA.6977-87, ROA.7002-03.

Contrary to Payne's brief, the charge as a whole did not give Houston language on which to "hang[] its arguments." Appellees' br. at 46. Had the trial court properly identified Houston's final policymaker, Houston could have argued that the ***only*** relevant policymaker was the chief of police ***and*** that the knowledge or actions of *any* other employee must be disregarded. *Monell* prohibits *respondeat superior* liability of any stripe, and Houston was denied the opportunity to develop this line

[9] Payne's argument focused predominantly on whether the alleged policies or customs existed and not who sanctioned them. *See, e.g.*, ROA.6985 ("[I]f we're looking for the policy, Captain Duplechain said, 'I drive 70 on North Shepherd on the clock.'"); ROA.6982-83 (referencing a post-accident circular "signed" by the police chief that "mimics exactly what Captain Duplechain testified to").

of attack. Instead, constrained by generic instructions that allowed liability based on the knowledge of ***any*** "policymaker," Houston was forced to modulate its argument:

> For ***the official policymaker*** to have acted with deliberate indifference, plaintiffs have to prove that the official must have – not only could have drawn an inference, but actually did draw an inference that a substantial risk of serious harm exists as a result of Houston's training or policy. That's where plaintiffs have given you no evidence. What they have given you, in closing just now, Plaintiffs' counsel was telling you "could have" or "should have." They didn't tell you what evidence supports that ***any policymaker*** actually drew an inference that the policies caused or had a substantial risk of harm. …
>
> … Now, the AVL data, you know, was gathered for purposes of this litigation. Plaintiffs presented no evidence that it was ever presented to the chief of police ***or any other policymaker***.
>
> … How can ***any policymaker*** have drawn an inference – actually drawn that inference – that this policy was defective or insufficient when there's no suggestion that anyone was hurt?

ROA.6697-98, 7000, ROA.6999.

While a review of closing arguments may help "place the words of the judge in context," the "focus must remain on the words of the judge." *U.S. v. Rubio*, 834 F.2d 442, 450 (5th Cir. 1987). It is the judge's words, not the lawyer's words, that "carry an authority bordering on the irrefutable." *Id.* (quotation omitted). And "argument alone will never suffice to compensate for an omitted instruction, where

that instruction is legally correct, represents a theory of defense with basis in the record which would lead to acquittal, and where that theory is not effectively presented elsewhere in the charge." *Id.* Here, Houston's closing argument could not compensate for the omitted instruction which was legally correct and which is not reflected anywhere else in the charge. Contrary to Payne's brief, it does not matter that Houston's counsel referenced the police chief during its closing because the jury was still permitted to find municipal liability based on the knowledge of non-final policymakers.

Finally, Houston did not invite error based on its opening statement which rhetorically asked the jury to look for evidence relating to the chief of police. Appellees' br. at 42. Under the invited error doctrine, "a defendant who asks for an instruction will not be heard to complain about the instruction on appeal." *U.S. v. James*, 177 F.4th 642, 651 (5th Cir. 2026). Houston did not invite or ask for an instruction permitting the jury to decide a question of law. ROA.6387-88. The court's instruction is defective because it allowed the jury to decide *Monell* liability based on the ordinary, layperson meaning of "policymaker." Appellant's br. at 44-45. Neither case cited by Payne applied the invited error rule to jury instructions. *See U.S. v. Rodrigo*, 934 F.2d 595, 597 (5th Cir. 1991) (applying invited error rule to defendant's complaint about government's improper closing argument where government had responded to defendant's improper closing argument); *U.S. v.*

*Green*, 272 F.3d 748, 756 (5th Cir. 2001) (defendant's opening statement did not open the door to the admission of evidence bearing on his guilty knowledge).

### C. The evidence is insufficient to establish that the City's final policymaker knew about or had constructive knowledge of an unconstitutional policy or custom.

Payne argues that a plaintiff's burden is to present facts sufficient to allow a reasonable juror to conclude that the "legally relevant policymaker" promulgated an unconstitutional policy. Appellees' br. at 30. Houston agrees that, under *Jett*, after the court identifies the final policymaker(s), the jury must decide whether the final policymaker's decisions "caused the deprivation of rights at issue." *Jett,* 491 U.S. at 737. Here, the district court should have granted judgment as a matter of law for Houston due to the absence of legally sufficient evidence proving that the chief of police—the only "legally relevant policymaker"—(i) had actual or constructive knowledge of an injury-causing policy or custom and (ii) responded with deliberate indifference to that knowledge, causing plaintiff's injury.

Payne cites *Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016), which addresses a plaintiff's pleading burden at the 12(b)(6) motion to dismiss stage. A more instructive case is *Advanced Technologies LLC v. City of Jackson*, 817 F.3d 163 (5th Cir. 2016), which addresses the court's obligation when the jury decides a case based on a legally irrelevant policymaker. In *Advanced Technologies*, the plaintiff won at trial based on the theory that the mayor was a final policymaker. The

district court granted the city's judgment as a matter of law after determining that the city council was the final policymaker under state law. This Court affirmed, explaining that "the jury's finding [regarding the mayor] was irrelevant—the only issue was whether [state] law established that the mayor was the final policymaker." *Id.* at 167-69. The verdict could not stand because plaintiff failed to present evidence for the jury to conclude that the city's final policymaker promulgated an unconstitutional policy. *Id*.

Similarly, the verdict cannot stand because Payne failed to present evidence sufficient to enable the jury to find that Houston's final policymaker—here, the chief of police—promulgated or sanctioned a policy or custom and was deliberately indifferent to the risk that constitutional injury will occur.

## IV. Payne adduced no evidence to meet the threshold for deliberate indifference.

As Houston consistently maintained throughout the case, ROA.1110-12, deliberate indifference is lacking due to the absence of a pattern of similar injury-producing incidents of which the Chief of Police was aware. *See* Appellant's br. at 27-31. Payne's brief unsuccessfully attempts to circumvent this problem in two ways.

### A. Payne improperly asserts a warped ratification theory that was neither pled nor proven.

First, citing *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509-11 (5th Cir. 2022), Payne suggested that she did not need specific examples of other constitutional deprivations because the Chief's awareness could be inferred. For this proposition, *Moore* cited *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir.1985).

In *Grandstaff*, the court held that, following a remarkable barrage of gunfire in the direction of an innocent bystander, an inference of the existence of a policy or custom could be inferred from "no reprimands, no discharges, and no admissions of error." *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985). The Court has since repeatedly recognized that the situation in *Grandstaff* was extreme and has declined to reach the same inference on less-extreme facts. *See e.g.*, *DeShay v. Bastrop Indep. Sch. Dist.*, 180 F.3d 262 (5th Cir. 1999); *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (facts in *Grandstaff* were "highly peculiar"). Furthermore, ratification goes to the ***existence*** of a policy or custom; *Grandstaff* did not address the separate inquiry required for deliberate indifference. *See Grandstaff*, 767 F.2d at 171-72.

In relying upon *Moore*, Payne asks to peg deliberate indifference upon a warped and unpled ratification theory. *See* ROA.2788 (joint pretrial order). *Moore* does not support Payne's argument. In *Moore* the Court held that a chief's failure

to take disciplinary action against subordinates after they violated the constitution is "some evidence" that the chief knew about the unconstitutional custom. 41 F.4th at 510. But here, not only was there no underlying constitutional violation, the evidence established that, Cabrera was cited for lack of sound judgment and served a 45-day suspension—one level below termination. ROA.6596, ROA.6604.

Payne also argues that the Chief's post-accident circular reminding officers to drive with due regard for public safety satisfies *Moore*'s failure to take corrective action. But nothing in the content of the circular supports a reasonable inference of knowledge of a custom of abusive and deadly driving practices. Rather, the circular reflects care and concern by reinforcing safe driving practices expected of all officers at all times.

### B. Payne improperly seeks to extend the single-incident exception beyond the failure-to-train context.

Second, Payne over-reaches with her assertion that deliberate indifference may be inferred where a constitutional violation would be the "highly predictable consequence" of the policy in question. *See* Appellees' br. at 31. Payne cites as the source of this proposition *Connick v. Thompson*, 563 U.S. 51, 61 (2011), *Comm'rs of Bryan Cnty v. Brown*, 520 U.S. 397, 407 (1997), and *Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 484 (5th Cir. 2014). But each of these cases used this language in the context of the single-incident exception for Section 1983 failure-to-train claims. *See id.* The single-incident exception is extremely narrow, applies only

to failure-to-train cases, and applies only when no training is provided at all. *See e.g. Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 312–13 (5th Cir. 2023); *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003).

Payne tacitly invites the Court to apply the single-incident exception beyond the unique and narrow training context. The single-incident exception cannot apply here—not even to Payne's failure to train theory—because the evidence at trial undisputedly established that Houston provided some training, including training related to driving. ROA.6593-95, ROA.7412-18.[10] Payne retained the burden of proving deliberate indifference through a pattern of similar violations, a burden Payne did not carry.[11] As Houston discussed in its opening brief, the AVL data is the ***only*** documentary evidence admitted at trial that reflects any driving by any other officer besides Officer Cabrera, it lacks context, and was never remotely connected to the Chief of Police. *See* Appellant's br. at 29-31. And the AVL contains zero data suggesting any injury or death.

And although the trial testimony included brief discussion about Officers Valdez and Curtis, ROA.7213-16, that incident was ultimately proven to be dissimilar. ROA.7253-54, ROA.7271-72. Further, two injury-producing events over

---

[10] Payne's brief also never addresses that because Officer Cabrera met and exceeded TCOLE minimum training requirements, Payne's training theory failed. *See* Appellant's br. at 33. For this reason alone, the Court should reverse and render Payne's training theory.

[11] *Montano* lends no credence to Payne's argument; there numerous witnesses testified that the allegedly unconstitutional practice at issue actually occurred and was common. *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 875 (5th Cir. 2016).

a six-month period, involving just three out of 5300 officers, including over 1,000 patrol officers responding to more than 2 million calls for service each year does not establish a pattern sufficient to establish deliberate indifference or a custom. ROA.7272-73. *See e.g.*, *Davidson v. City of Stafford*, 848 F.3d 384, 396–97 (5th Cir. 2017) (finding three arrests over three and a half years did not establish a pattern of constitutional violations); *Carnaby v. City of Houston*, 636 F.3d 183, 189–90 (5th Cir. 2011) (holding two reports of violations of a policy in four years in Houston did not amount to pattern); *Peterson v. City of Fort Worth, Tex*., 588 F.3d 838, 851–52 (5th Cir. 2009) (holding 27 complaints of excessive force over a period of three years in department with more than 1,500 officers did not constitute a pattern); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (holding eleven incidents cannot support a pattern of illegality in one of the Nation's largest cities and police forces).

## CONCLUSION

Appellant City of Houston prays that the Court will reverse and render judgment in favor of the City and grant all such other and further relief to which it may be entitled, including costs of appeal; or, in the alternative, that the Court reverse and order a new trial on liability and damages.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

**CHRISTY L. MARTIN**
**Chief Torts/Civil Rights**

Date: September 22, 2026 By: */s/ Christy L. Martin*
ATTORNEY IN CHARGE
SBN: 24041336
FBN: 754168
832.393.6438
christy.martin@houstontx.gov
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
832.393.6259 Facsimile

***Attorneys for Defendant***
***City of Houston, Texas***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded electronically through the electronic filing manager on September 22, 2026 to all known counsel of record.

*/s/ Christy L. Martin*
CHRISTY L. MARTIN

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing was prepared in Microsoft Word 2016 MSO 64-bit in Times New Roman 14 point font; the word-count function shows that, excluding those sections exempted under FRAP 32(f), the brief contains 6,416 words.

*/s/ Christy L. Martin*
CHRISTY L. MARTIN